Filed 2/5/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S215927 |
| v. | ) | |
| | ) | Ct.App. 4/2 E054307 |
| VICTORIA SAMANTHA COOK, | ) | |
| | ) | Riverside County |
| Defendant and Appellant. | ) | Super. Ct. No. SWF10000834 |
| _____ | ) | |

When a defendant is convicted of a crime, the sentence for that crime may sometimes be enhanced if the defendant "personally inflicts great bodily injury on any person." (Pen. Code, § 12022.7, subd. (a).)[1] Defendant was convicted of three counts of gross vehicular manslaughter. We must decide whether the sentence for the gross vehicular manslaughter of one victim may be enhanced for defendant's infliction of great bodily injury on *other* victims. The question requires us to interpret section 12022.7, subdivision (g), which provides that the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated. Penal Code former section 12022.7, the provision at issue here, was repealed in 2010, operative January 1, 2012. (Stats. 2010, ch. 711, § 4.) Current section 12022.7 was enacted in 2010, operative January 1, 2012 (Stats. 2010, ch. 711, § 5) and "continues former Section 12022.7 without change" (Nonsubstantive Reorganization of Deadly Weapons Statutes (June 2009) 38 Cal. Law Revision Com. Rep. (2009) p. 341).

1

enhancement "shall not apply to murder or manslaughter" or "if infliction of great bodily injury is an element of the offense."

We conclude that subdivision (g) of section 12022.7 means what it says: Great bodily injury enhancements do not apply to a conviction for murder or manslaughter. A defendant convicted of murder or manslaughter who also commits crimes against other victims may be convicted of those additional crimes and, to the extent the sentencing laws permit, punished separately for them. But the sentence for manslaughter may not be enhanced for the infliction of great bodily injury as to anyone. Accordingly, we reverse the judgment of the Court of Appeal to the extent it held defendant's manslaughter conviction is subject to any great bodily injury enhancement.

## I. FACTS AND PROCEDURAL HISTORY

The facts of the crime are largely irrelevant to the sentencing issue before us. In essence, on June 2, 2009, while driving a Ford Fusion, defendant Samantha Victoria Cook was involved in an automobile accident in which three persons were killed and a fourth seriously injured. The evidence supported a jury finding that defendant caused the accident by speeding and driving recklessly.

A jury found defendant guilty of three counts of gross vehicular manslaughter, one count each for the three persons who died. (§ 192, subd. (c)(1).) As to the first count, the jury also found true three allegations that defendant personally inflicted great bodily injury. Two of the great bodily injury allegations related to the two victims who died and were the subject of the other two manslaughter convictions. The third related to the person who was injured but survived. This person was not the subject of any other charge or conviction.

The trial court sentenced defendant to state prison for a total of nine years eight months, consisting of the midterm of four years for the first manslaughter conviction, one year four months (one-third of the midterm) for each of the other

2

two manslaughter convictions, and three years for the great bodily injury enhancement as to the victim who was injured but survived. The court struck the punishment for the great bodily injury enhancements as to the victims who died.

On appeal, defendant argued that section 12022.7, subdivision (g), prohibits all of the great bodily injury enhancements. The Court of Appeal upheld the enhancement as to the surviving victim, but reversed the enhancements as to the manslaughter victims. We granted the Attorney General's petition for review, which presented only the question of whether the Court of Appeal erred in reversing the enhancements as to the manslaughter victims. We later requested and received supplemental briefing on the additional question of whether *any* great bodily injury enhancement was proper.

## II. DISCUSSION

### A. Background

Section 12022.7, subdivision (a), provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Subdivisions (b), (c), (d), and (e) of that section, which do not apply in this case, provide longer enhancements for the infliction of specified kinds of great bodily injury. Subdivision (f) of that section defines " 'great bodily injury.' " Section 12022.7, subdivision (g), the provision we are interpreting, provides: "This section shall not apply to murder or manslaughter or a violation of Section 451 [arson] or 452 [unlawfully causing a fire]. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense."

No one disputes that section 12022.7, subdivision (g), prohibits enhancing a manslaughter or murder conviction for inflicting great bodily injury on the person

3

who is the subject of that conviction. The question before us is when, if ever, a manslaughter conviction may be enhanced for the infliction of great bodily injury on *other* victims during the commission of the manslaughter. Here, during the commission of manslaughter as to one of the victims, defendant killed (and thus inflicted great bodily injury on) two other victims and inflicted great bodily injury on another victim, who survived. We must decide whether defendant's sentence for one of the manslaughter convictions may be enhanced for any of the other great bodily injuries defendant inflicted and, if so, which ones.

Several cases have considered when, if ever, a great bodily injury enhancement may attach to a murder or manslaughter conviction, with inconsistent results. We will first review the cases. Then we will consider what the proper rule should be.

### B. The Cases

Until recently, to the extent they confronted this question, the cases generally assumed or stated that section 12022.7's great bodily injury enhancement simply does not apply to murder or manslaughter. For example, in deciding a different question, the Court of Appeal in *People v. Valencia* (2000) 82 Cal.App.4th 139, 143, stated that "a section 12022.7 great bodily injury enhancement may not enhance a murder conviction."

Closer on point is *People v. Beltran* (2000) 82 Cal.App.4th 693 (*Beltran*). There, the defendant, while fleeing from the police in a vehicle, collided with another vehicle, killing one person and seriously injuring a second. He was convicted of evading a pursuing peace officer causing serious injuries to others (Veh. Code, § 2800.3) and vehicular manslaughter. As to the Vehicle Code count, the jury found true two great bodily injury enhancements — one for the deceased victim, who was the subject of the vehicular manslaughter conviction, and one for

4

the surviving victim. No great bodily injury enhancement was alleged as to the vehicular manslaughter count. The Court of Appeal considered whether the enhancements as to the Vehicle Code count were valid. It noted that "[u]nder section 12022.7 [former] subdivision (f) [now subdivision (g)] the enhancements could not be based on Beltran's count 3 conviction of vehicular manslaughter. The only basis for the enhancements is the count 1 conviction of evading a peace officer under Vehicle Code section 2800.3." (*Beltran*, at p. 696.) But the court also found that the enhancements were invalid as to the Vehicle Code violation because infliction of great bodily injury is an element of that offense. For this reason, it reversed both great bodily injury enhancements. It drew no distinction between the enhancement for the deceased victim and that for the surviving victim.

The first case to permit a great bodily injury enhancement to attach to a manslaughter conviction was *People v. Verlinde* (2002) 100 Cal.App.4th 1146 (*Verlinde*). There, the defendant was involved in an accident in which one person was killed and two seriously injured. As relevant here, she was convicted of gross vehicular manslaughter while intoxicated. As to the manslaughter conviction, the jury also found true two great bodily injury enhancements, one each for the two surviving victims. The Court of Appeal reversed one of the enhancements for reasons not relevant here, but upheld the second enhancement. It rejected the defendant's argument that neither enhancement was valid under section 12022.7, subdivision (g).

The *Verlinde* court explained why, in its view, the great bodily injury enhancement could properly attach to the manslaughter conviction. "Section 12022.7 does not define a separate offense, but rather is a legislative attempt to punish more severely those crimes that result in great bodily 'on any person.' (§ 12022.7, subd. (a); see also *People v. Parrish* (1985) 170 Cal.App.3d 336, 344.)

5

The language of section 12022.7, subdivision (g) does not limit application of the statute to this vehicular manslaughter case where, in addition to the homicide victim, two other victims suffered great bodily injury.  The statutory exemption for murder and manslaughter is intended to bar imposition of an enhancement for the injuries inflicted on the homicide victim, who obviously has suffered great bodily injury.  Thus, the statutory exemption prevents prohibited dual punishment for the same crime.  (See § 654.)  'When a defendant engages in violent conduct that injures several persons, he may be separately punished for injuring each of those persons, notwithstanding section 654.  [Citation.]'  (*People v. Champion* (1995) 9 Cal.4th 879, 934-935.)  Verlinde's argument is inconsistent with a fundamental objective of our penal justice system, namely 'that one's culpability and punishment should be commensurate with the gravity of both the criminal act undertaken and the resulting injuries.'  (*People v. Hill* (1994) 23 Cal.App.4th 1566, 1574.)  Furthermore, a fundamental principle of statutory construction is that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.  (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113.)"  (*Verlinde*, *supra*, 100 Cal.App.4th at pp. 1168-1169.)

Section 12022.7's application to murder or manslaughter next arose in *People v. Weaver* (2007) 149 Cal.App.4th 1301 (*Weaver*).  There, the defendant pleaded guilty to gross vehicular manslaughter while intoxicated (§ 191.5, subd, (a)) and admitted the truth of a great bodily injury enhancement allegation.  The enhancement did not concern the subject of the manslaughter conviction, but rather, another victim who survived.  Relying on *Verlinde*, *supra*, 100 Cal.App.4th 1146, the Court of Appeal upheld the enhancement.  It "note[d] the express language of section 12022.7, subdivision (a) does *not* limit its application to a specific *victim* of a felony offense.  Rather, it applies to great bodily injuries

6

sustained by 'any *person* other than an accomplice.' (§ 12022.7, subd. (a), italics added.)" (*Weaver*, at p. 1330.) It found section 12022.7's language "sufficiently broad to include persons other than the victim of a victim-specific felony offense who sustain great bodily injury during the defendant's commission of that offense." (*Ibid.*) "Furthermore," the court noted, "it is generally appropriate that a defendant be subject to greater punishment for committing an offense if his or her commission of that offense causes injuries to multiple persons. [Citations.] It is consistent with our criminal justice system to impose greater punishment on Weaver for the great bodily injuries she personally inflicted on [the surviving victim] during her commission of the section 191.5, subdivision (a) offense that caused [the deceased victim's] death." (*Id.* at p. 1331.)

*Weaver* also found support for its conclusion in *People v. Oates* (2004) 32 Cal.4th 1048, where we upheld multiple enhancements under former section 12022.53, subdivision (d) (enhancement for discharging a firearm and causing great bodily injury), and in *People v. Ausbie* (2004) 123 Cal.App.4th 855, where the Court of Appeal upheld multiple great bodily injury enhancements for a single conviction of assault by means of force likely to produce great bodily injury, a crime that does not require, as an element, the actual infliction of great bodily injury. (*Weaver*, *supra*, 149 Cal.App.4th at pp. 1331-1335.)

The *Weaver* court found *Beltran*, *supra*, 82 Cal.App.4th 693, "inapposite," apparently because its holding concerned the Vehicle Code section 2800.3 conviction rather than the manslaughter conviction. (*Weaver*, *supra*, 149 Cal.App.4th at p. 1335, fn. 35.) Citing *Verlinde*, *supra*, 100 Cal.App.4th 1146, it also disagreed with *Beltran*'s conclusion that no great bodily injury enhancement would apply to a manslaughter conviction. It said the *Beltran* court reached that conclusion "[w]ithout any substantive reasoning." (*Weaver*, at p. 1335, fn. 35.)

7

The next case to consider this question was *People v. Julian* (2011) 198 Cal.App.4th 1524 (*Julian*). There, the defendant was involved in an accident in which one person (Terri Keller) was killed immediately, one (Amanda Keller) died after being in a coma for several months, and a third (Alexis Keller) was badly injured but survived. A jury convicted the defendant of two counts of vehicular manslaughter while intoxicated without gross negligence (§ 191.5, subd. (b)), count 1 for Terri's death and count 2 for Amanda's death. The defendant was charged with no substantive count as to Alexis, the surviving victim. The jury also found true two great bodily injury enhancement allegations as to each manslaughter count. As to Terri, the two allegations were for the coma Amanda suffered before she died and for Alexis's injuries. Because section 12022.7, subdivision (b), imposes a five-year enhancement for great bodily injury "which causes the victim to become comatose due to brain injury," the enhancement regarding Amanda's coma was for five years. The allegations as to Amanda were for Terri's death and Alexis's injuries.

The trial court in *Julian* sentenced the defendant to prison for 12 years for Terri's manslaughter, consisting of the upper term of four years for the manslaughter itself, five years for Amanda's coma, and three years for Alexis's great bodily injury. The court also imposed a sentence for Amanda's manslaughter with the two three-year great bodily injury enhancements attached to that count. But to avoid punishing the defendant twice for Amanda's and Alexis's injuries, the court stayed that sentence under section 654, which prohibits multiple punishment for a single act or omission. (*Julian*, *supra*, 198 Cal.App.4th at p. 1526.)

Relying in part on *Weaver*, *supra*, 149 Cal.App.4th 1301, and *Verlinde*, *supra*, 100 Cal.App.4th 1146, the *Julian* court upheld all of the great bodily injury enhancements and the sentence. It noted that in *Weaver* and *Verlinde*, the great

8

bodily injury enhancement was not for a victim who died but for a victim who survived. But it concluded that although two of the victims in the case before it "died as a result of their injuries and their deaths support Julian's manslaughter convictions, in this case their injuries also support enhancements under section 12022.7. [¶] As we did in *Verlinde* and *Weaver*, we narrowly construe the exception set forth in section 12022.7, subdivision (g). Under section 12022.7, subdivision (g), when a defendant is convicted of murder or manslaughter, that conviction may not be enhanced with the injury the victim of the murder or manslaughter necessarily suffered. However, injuries caused to *other* victims of the defendant's conduct may serve as enhancements under section 12022.7." (*Julian*, *supra*, 198 Cal.App.4th at p. 1530.)

The court noted that, regarding the injuries the surviving victim suffered, *Weaver* and *Verlinde* were indistinguishable. It then turned to the question regarding the victim who died. "This brings us then to the injuries Amanda suffered. The fact Amanda died from her injuries cannot, by itself, prevent those injuries from being used as an enhancement to Julian's punishment for Terri's death. Amanda's injuries were just as distinct from Terri's injuries as Alexis's injuries and under *Verlinde* and *Weaver* their separate and distinct nature permits the injuries to be used as an enhancement. [Citations.] To hold Alexis's injuries will support an enhancement but, because she died, Amanda's injuries will not, would permit a defendant, such as Julian, to benefit to some extent from the fact one of his multiple victims died rather than survived. We of course must reject such a grotesque interpretation of the statute. As we stated in *Verlinde*, 'a fundamental principle of statutory construction is that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences.' (*Verlinde*, *supra*, 100 Cal.App.4th at pp. 1168-1169.)

9

"Moreover, the fact Amanda's fatal injuries led to a second distinct manslaughter conviction did not prevent the trial court from imposing a section 12022.7, subdivision (b) enhancement to Terri's manslaughter based on Amanda's injuries. Under section 654 Julian could not and was not punished twice for the fatal injuries Amanda suffered. [Citations.] As we have noted, although Amanda's fatal injuries were the basis for both the five-year enhancement imposed for Terri's death and the four-year upper term imposed for the second manslaughter conviction, the trial court properly stayed execution of the second manslaughter sentence under section 654. Thus, a broader interpretation of section 12022.7, subdivision (g) is not necessary to avoid dual punishment." (*Julian*, *supra*, 198 Cal.App.4th at pp. 1530-1531.)

This brings us to the case we are now reviewing. Agreeing with *Verlinde*, *supra*, 100 Cal.App.4th 1146, and *Weaver*, *supra*, 149 Cal.App.4th 1301, and rejecting *Beltran*, *supra*, 82 Cal.App.4th 693 (which it observed had "rel[ied] exclusively on the language of section 12022.7, subdivision (g)"), the Court of Appeal upheld the great bodily injury enhancement for the victim who survived. But it disagreed with *Julian*, *supra*, 198 Cal.App.4th 1524, regarding the victims who died and were the subject of separate manslaughter convictions. It reversed the great bodily injury enhancements as to those victims.

The court explained that "although we do not construe section 12022.7, subdivision (g) as broadly as does *Beltran*, neither do we agree it should be construed as narrowly as does *Julian*. . . . Subdivision (g) would appear to mean what it clearly reads, i.e., the enhancement does not attach with regard to a victim of murder or manslaughter for which a conviction on the substantive count has been obtained. Moreover, *Julian*'s holding results in a pleading shell game where a manslaughter charge as to victim A is enhanced with the great bodily injury of

10

B, simultaneously charging the defendant with the manslaughter of B with an attached enhancement for A."

The court recognized *Julian*'s concern that the defendant should not benefit from the fact one of the victims died, but it found that rationale "does not necessarily withstand scrutiny." It explained that "in *Julian* the People could have merely pled the first count of manslaughter against Terri Keller with the section 12022.7 enhancements as to both Alexis Keller and Amanda Keller without charging a second count of manslaughter against Amanda and have obtained the same sentencing result. Indeed, in the instant case the People did not charge defendant for any substantive crime for the injuries sustained by [the surviving victim]. Rather, they merely attached the [section 12022.7,] subdivision (a) enhancement to the count 1 charge. This most likely reflects the People's determination that any substantive crime they could have charged defendant with for injuries sustained by [the surviving victim] would have resulted in lesser punishment than simply alleging the enhancement for those injuries. [¶] In the alternative, in *Julian*, the People could have pled the case exactly as they did, but moved for dismissal of the count 2 charge and attached enhancements pursuant to section 1385 [, which permits the court to dismiss an action] at the time for sentencing — again, resulting in the same potential sentence for the defendant without violating the statutory language of section 12022.7, subdivision (g)."

The court also believed that "any problem concerning the degree of punishment for the charge of vehicular manslaughter while intoxicated without gross negligence at issue in *Julian* being less than that for the section 12022.7, subdivision (b) enhancement [five years for the coma] is something that should be dealt with by the Legislature, not by judicial violation of the clear language of section 12022.7, subdivision (g)." The court concluded that "however noble, the desire to punish a defendant more extensively for the perceived egregiousness of

11

her crimes does not justify violating the statutory prohibitions on imposing section 12022.7 enhancements with regard to victims for which defendant has already been convicted of a homicide. Therefore, we shall reverse the true findings on the section 12022.7, subdivision (a) enhancements with respect to [the other manslaughter victims]."

The most recent case to consider this question is *Hale v. Superior Court* (2014) 225 Cal.App.4th 268 (*Hale*). There, the defendant was involved in an accident in which three persons were killed. He was charged with three counts of vehicular manslaughter while intoxicated (§ 191.5, subd. (b)), one count for each of those who died. Each of the three counts included two great bodily injury enhancement allegations under section 12022.7, one each for the other two deceased victims, for a total of six great bodily injury allegations. In a pretrial writ matter, the Court of Appeal ordered all of the enhancement allegations dismissed.

The *Hale* court distinguished *Weaver*, *supra*, 149 Cal.App.4th 1301, and *Verlinde*, *supra*, 100 Cal.App.4th 1146, on the ground that they "did not involve as here a [great bodily injury] enhancement alleged for a deceased victim's injuries, where the deceased victim was also a named victim of another manslaughter count arising out of the same facts and charged in the same case against the defendant." (*Hale*, *supra*, 225 Cal.App.4th at p. 272.) But it believed those cases "cast doubt on the validity of such duplicative prosecution. *Verlinde* expressly rejected the proposition in dicta, explaining that subdivision (g)'s 'statutory exemption for murder and manslaughter is intended to bar imposition of an enhancement for the injuries inflicted on the homicide victim, who obviously suffered great bodily injury.' (*Verlinde*, at p. 1168.) Put another way, the guilty verdict on a manslaughter count necessarily includes a finding of great bodily injury, and the

12

sentencing range the Legislature has prescribed for manslaughter necessarily includes punishment for the injuries the defendant inflicted on the victim.

"*Weaver* reached the same conclusion. *Weaver* criticized as '[w]ithout any substantive reasoning' a case holding that section 12022.7 did not apply *at all* in vehicular manslaughter cases, even as an enhancement for injuries suffered by other victims besides the deceased victim. (*Weaver*, *supra*, 149 Cal.App.4th at p. 1335, fn. 35, criticizing *People v. Beltran* (2000) 82 Cal.App.4th 693, 695.) As pertinent here, in upholding on appeal a [great bodily injury] enhancement for victims *other than the deceased*, the *Weaver* court implicitly concluded the enhancement did not apply to a victim for whom the defendant faced manslaughter charges. (*Weaver*, at pp. 1330-1335.)" (*Hale*, *supra*, 225 Cal.App.4th at pp. 272-273.)

While apparently acquiescing in *Verlinde*'s and *Weaver*'s holdings (which *Hale*'s facts did not implicate), the *Hale* court disagreed with *Julian*'s extension of those cases to permit a great bodily injury enhancement of one manslaughter count for injuries suffered by another, separately charged, manslaughter victim. It described *Julian*, *supra*, 198 Cal.App.4th 1524, as not barring the attachment of a great bodily injury "enhancement based on one victim's fatal injuries to a manslaughter count pertaining to another victim, *even if the defendant is also charged and convicted of manslaughter for the first victim's death*. The court implicitly found dispositive the pleading artifice of attaching an enhancement to one count rather than another. (*Julian*, at p. 1530.)" (*Hale*, *supra*, 225 Cal.App.4th at p. 273.)

As did the Court of Appeal in this case, the *Hale* court recognized *Julian*'s concern that the defendant should not benefit from the fact a victim died rather than was seriously injured but survived. But it believed that "*Julian*'s interpretation . . . introduces its own anomaly in which the bar on [great bodily

13

injury] enhancements in subdivision (g) applies only in single-victim vehicular homicides. *Julian* acknowledges subdivision (g) bars a [great bodily injury] enhancement where the same victim is named in the underlying count (*Julian*, *supra*, 198 Cal.App.4th at p. 1530), as in a single-victim accident. But according to *Julian*, the bar is circumvented in multiple-victim accidents by simply attaching a [great bodily injury] enhancement for a deceased victim's injuries to a manslaughter count for another victim. Yet nothing in the statutory language suggests the Legislature intended to limit subdivision (g) to vehicular manslaughter cases involving one victim, but allow [great bodily injury] enhancements in multiple-victim cases.

"Proscribing punishment is the Legislature's domain, and we conclude the legislative proscription in subdivision (g) means what it says. The statutory language plainly states a [great bodily injury] enhancement '*shall not apply* to murder or manslaughter . . . .' (Subd. (g), italics added.) Removing any conceivable doubt, subdivision (g) further provides a [great bodily injury] enhancement '*shall not apply* if infliction of great bodily injury is an element of the offense' (italics added). Great bodily injury is by definition inherent in a murder or manslaughter victim's injuries that result in death. Consequently, great bodily injury is necessarily proven when the victim's death is proven as an element of those offenses. By statutory command, a [great bodily injury] enhancement therefore 'shall not apply.' (Subd. (g).) We must give effect to this plain language." (*Hale*, *supra*, 225 Cal.App.4th at pp. 274-275, fn. omitted.)

The *Hale* court did "not find subdivision (g) ambiguous. We must interpret the statute according to its terms because ' "the words the Legislature chose are the best indicators of its intent." ' (*People v. Ramirez* (2010) 184 Cal.App.4th 1233, 1238.) . . . The statutory purpose of the Legislature's [great bodily injury] enhancement regime is not to maximize punishment under every pleading artifice

14

a prosecutor can devise, but instead to 'deter[] the use of excessive force and the infliction of *additional harm beyond that inherent in the crime itself*.' (*People v. Wolcott* (1983) 34 Cal.3d 92, 108.) The great bodily injuries a vehicular manslaughter victim suffers are inherent in the offense that causes his or her death, and therefore precluded by subdivision (g) as a basis for enhancement." (*Hale*, *supra*, 225 Cal.App.4th at pp. 275-276.)

Responding to the district attorney's argument that the statute should not be interpreted to allow a defendant to benefit from the fact the victims died, the *Hale* court noted that potential anomalies of this kind will exist under *any* interpretation of section 12022.7, subdivision (g). "The absurdity argument does not aid the district attorney precisely because of peculiarities in the punishment of drunk driving offenders. Simply put, the district attorney's charging artifice does not result in longer imprisonment for a drunk driving offender who commits vehicular manslaughter than one who only injures his victims. In other words, the district attorney's charging methodology does not correct the absurdity he identifies. If Hale had severely injured his victims instead of causing their deaths, it appears he would face a maximum prison term of 12 years. Specifically, a defendant faces a potential upper term of three years for causing 'bodily injury' while driving under the influence (Veh. Code, § 23153, subds. (a) &(b), 23554; see Pen. Code, § 18 [providing for upper term of three years where felony punishment is unspecified]), which may be enhanced by three years for causing *great* bodily injury [citations]. A great bodily injury enhancement may be imposed for each victim without violating section 654 [citation], resulting in a total term of 12 years when the defendant injures three victims. This figure exceeds the maximum 10 years' imprisonment the district attorney seeks for the vehicular homicides he alleges Hale committed." (*Hale*, *supra*, 225 Cal.App.4th at pp. 276-277.)

The *Hale* court stated that a "sentencing disparity does not necessarily render a statutory scheme absurd because it is the Legislature's prerogative to affix punishment. [Citation.] But the disparity here is glaring and unjust. It inures, however, to Hale's benefit and therefore furnishes him no basis for an equal protection or disproportionate punishment claim. The district attorney has no corresponding constitutional claims to assert against the disparity. More to the point, we may not simply rewrite the statutory scheme, purporting to sit as a super-Legislature. Here, as discussed, the express exclusion in subdivision (g) precludes the prosecutor's duplicative charging theory for the victim's great bodily injuries necessarily subsumed in their deaths. We appeal to the Legislature to correct this manifest sentencing disparity by ensuring proportional punishment for offenders who commit vehicular manslaughter." (*Hale*, *supra*, 225 Cal.App.4th at p. 277.)

Finally, the *Hale* court "observe[d] that charging a defendant with 'only' one count of vehicular manslaughter and attaching to that count two [great bodily injury] enhancements for two additional deceased victims technically avoids violating subdivision (g)'s bar on a [great bodily injury] enhancement for the same injuries subsumed in a manslaughter count for the same victim. Charging in this manner potentially yields the same 10-year term the district attorney seeks here, specifically a four-year upper term on the manslaughter count and three years on each of two [great bodily injury] enhancements for two additional deceased victims." (*Hale*, *supra*, 225 Cal.App.4th at p. 277, fn. 4.) Noting that the district attorney did not charge the case in that manner, the court expressed no opinion on the point. (*Ibid.*)

## C. The Proper Rule

After reviewing these cases, we see that the relatively early case of *Beltran*, *supra*, 82 Cal.App.4th 693, stated in dicta that no great bodily injury enhancement

16

can attach to a murder or manslaughter conviction, and held that no such enhancement can attach to a crime for which infliction of great bodily injury is an element. *Verlinde*, *supra*, 100 Cal.App.4th 1146, *Weaver*, *supra*, 149 Cal.App.4th 1301, and the Court of Appeal in this case disagreed with *Beltran* and permitted a great bodily injury enhancement for a *surviving* victim to attach to a manslaughter conviction, at least when the surviving victim is not the subject of a separate charge. *Julian*, *supra*, 198 Cal.App.4th 1524, permitted *any* great bodily injury enhancement to attach to a manslaughter conviction other than one for the charged victim, including enhancements for victims who are the subject of separate manslaughter charges. The Court of Appeal in this case and *Hale*, *supra*, 225 Cal.App.4th 268, disagreed with *Julian* and refused to permit a great bodily injury enhancement to attach to a manslaughter conviction for victims who are the subject of separate manslaughter counts. We must determine the correct rule.

We conclude that *Beltran*, *supra*, 82 Cal.App.4th 693, was correct, and the later cases erred when they began to find exceptions to section 12022.7, subdivision (g)'s command that great bodily injury enhancements "shall not apply to murder or manslaughter." Subdivision (g) means what it says — great bodily injury enhancements simply do not apply to murder or manslaughter. The *Weaver* court and the Court of Appeal here criticized *Beltran* for relying exclusively on subdivision (g)'s language without additional substantive reasoning, but doing so was reasonable given the simplicity and clarity of that language. As the *Hale* court noted, the statutory language is the best indicator of the Legislature's intent. (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.)

Noting that subdivision (a) of section 12022.7 applies to someone who "inflicts great bodily injury on *any* person other than an accomplice" (italics added), and arguing that the statute must be read as a whole, the Attorney General

17

contends that subdivision (g)'s limitation applies only to the victim of the charged murder or manslaughter and not to "any" other victim. But subdivision (g)'s plain language is not so limited. It simply states that the section, meaning all of section 12022.7, does not apply to murder or manslaughter.

The Court of Appeal in this case said it was interpreting section 12022.7, subdivision (g), to "mean what it clearly reads, i.e., the enhancement does not attach with regard to a victim of murder or manslaughter for which a conviction on the substantive count has been obtained." But that subdivision does not clearly so read. Its clear reading is the unqualified statement that the great bodily injury enhancement "shall not apply to murder or manslaughter" (§ 12022.7, subd. (g)), not the qualified statement that the enhancement "shall not apply to murder or manslaughter with regard to a victim of murder or manslaughter for which a conviction on the substantive count has been obtained." If the latter had been the Legislature's intent, it would not have used the simple, unqualified language it employed.

With considerable justification, the Court of Appeal here criticized *Julian*'s holding as "result[ing] in a pleading shell game where a manslaughter charge as to victim A is enhanced with the great bodily injury of B, simultaneously charging the defendant with the manslaughter of B with an attached enhancement for A." But then the court suggested what could justifiably be called its own pleading shell game — that the prosecutor might avoid the bar on great bodily injury enhancements for a victim who is the subject of a separate conviction simply by charging only one count of manslaughter, or if a second manslaughter count is originally charged, by later moving to dismiss the second manslaughter count.

We think the correct approach, one that comports with section 12022.7, subdivision (g)'s language, is to prohibit any such pleading shell games. The prosecution can charge a defendant for each manslaughter the defendant

18

committed and, if appropriate, for crimes committed against surviving victims, and the court can sentence the defendant for each crime against separate victims for which the defendant is convicted to the extent the sentencing laws permit. The *Verlinde* court interpreted subdivision (g) as permitting a manslaughter conviction to be enhanced for injuries suffered by a surviving victim in order to avoid "absurd consequences which the Legislature did not intend." (*Verlinde*, *supra*, 100 Cal.App.4th at p. 1169.) But it did not identify what those absurd consequences might be. We see nothing absurd in charging and punishing a defendant separately for whatever crimes that defendant committed against separate victims.

The *Verlinde* and *Weaver* courts argued that the defendant should be punished commensurately with the gravity of the criminal act and its result, and a defendant who injures more than one person should be subject to greater punishment than a defendant who injuries only one person. (*Verlinde*, *supra*, 100 Cal.App.4th at p. 1168; *Weaver*, *supra*, 149 Cal.App.4th at p. 1331.) But reading subdivision (g) as requiring the prosecution to charge a defendant with separate crimes against separate victims, and permitting the court to sentence the defendant for those crimes, does punish more severely a defendant who injures multiple persons. Here, defendant was convicted of three counts of vehicular manslaughter. The court sentenced her to prison for the midterm of four years for one of the manslaughters and consecutive terms of one year four months (one-third of the midterm) for the other two manslaughters. Presumably, if defendant had been charged with and convicted of a crime as to the surviving victim, the court could have imposed a consecutive sentence for that crime.

Thus, imposing a consecutive sentence for each crime committed against a separate victim would punish a defendant who injures more than one person more severely than a defendant who injures only one person. To be sure, in cases of vehicular manslaughter, the increase in punishment for additional persons injured

19

will be less if we interpret section 12022.7, subdivision (g), to mean what it says than it would be under an interpretation that permits great bodily injury enhancements for other victims to attach to a manslaughter conviction. This is because the statutory punishment for vehicular manslaughter is relatively short and even shorter for additional victims. The vehicle manslaughter conviction of this case is punishable by two, four, or six years. (§ 193, subd. (c)(1).) A consecutive sentence for additional convictions would be for one-third of the middle term of four years, or one year four months. (§ 1170.1, subd. (a); see *People v. Felix* (2000) 22 Cal.4th 651, 655.) One year four months is shorter than the three-year great bodily injury enhancement specified in section 12022.7, subdivision (a), and even more so than the longer enhancements specified in other subdivisions of that section, such as section 12022.7, subdivision (b)'s five-year enhancement for causing a coma. This means that if the sentence for the one manslaughter victim may be enhanced for other victims' great bodily injuries, then the sentence for the manslaughter of the other victims would *always* be subsumed by the enhancement.

But section 193, subdivision (c)(1), establishes what the Legislature has determined is the appropriate punishment for vehicular manslaughter, and section 1170.1, subdivision (a), establishes what the Legislature has determined is the proper way to sentence consecutively when there are multiple victims. As the *Hale* court indicated, the Legislature's purpose is not to maximize the punishment under any pleading artifice imaginable, but to impose the punishments it established by statute. (See *Hale*, *supra*, 225 Cal.App.4th at p. 275.)

As the Attorney General argues and the *Julian* court noted, to permit enhancement for injuries a surviving victim suffered, but not to permit enhancement for the *death* of other victims, could result in a defendant who merely injured additional victims receiving a longer total sentence than a defendant who killed the additional victims. For this reason, the *Julian* court held

20

that if, as *Verlinde* and *Weaver* had concluded, a great bodily injury enhancement for a surviving victim can attach to a manslaughter victim, so too must a great bodily injury for one manslaughter victim attach to the conviction for a different manslaughter victim. If one accepts the holdings of *Verlinde* and *Weaver*, *Julian*'s extension of those holdings was a reasonable effort to avoid the obvious anomaly of making the potential sentence longer when additional victims survived than would be possible when the additional victims had died. But *Julian*'s holding separates the law ever farther from section 12022.7, subdivision (g)'s language than did *Verlinde*'s or *Weaver*'s. Rather than supporting *Julian*'s extension of the earlier cases, we think the problems that have arisen demonstrate that *Verlinde* and *Weaver* erred in permitting *any* great bodily injury enhancement to attach to a manslaughter conviction. The answer to the potential anomaly is not to disregard subdivision (g)'s plain language, but instead simply to mandate that a defendant receive the punishment prescribed for each crime committed against each victim.

We must also note that, as the *Hale* court explained, it appears that no interpretation of section 12022.7, subdivision (g), is guaranteed to eliminate all possible anomalies. Fact patterns might exist in which crimes could be charged in such a way that a defendant who merely injured might face a longer potential sentence than one who killed. (See *Hale*, *supra*, 225 Cal.App.4th at pp. 276-277.) Because of the complexity of today's sentencing rules, other potential anomalies might exist.[2] But no anomaly exists in this case, and we are unaware of any case

[2]     For an example of a sentencing anomaly this court has confronted, see *People v. King* (1993) 5 Cal.4th 59, 64-70, where a literal interpretation of interrelated statutes would have meant that some juveniles convicted of first degree murder would be eligible to be committed to the former California Youth Authority (CYA) rather than sentenced to state prison, but the same juveniles who merely *attempted* to commit first degree murder would be ineligible for such a commitment. To avoid an absurd result the Legislature could not have intended,

*(footnote continued on next page)*

21

where the potential anomaly *Hale* noted has actually arisen. If a case arises in which a defendant who merely injured faces a longer potential sentence than if that defendant had killed, the courts can consider the problem, and what to do, at that time and in that case. And, of course, as the *Hale* court recognized, the Legislature can change the sentencing laws anytime it chooses to do so.

Finally, the *Weaver* court found support for its conclusion in *People v. Oates*, *supra*, 32 Cal.4th 1048, and *People v. Ausbie*, *supra*, 123 Cal.App.4th 855. (*Weaver*, *supra*, 149 Cal.App.4th at pp. 1331-1335.) Those cases might support a conclusion that, in some situations, multiple great bodily injury enhancements can attach to a single crime, a point on which we express no opinion. But neither case concerned the attachment of great bodily injury enhancements to manslaughter or murder, and thus they provide no support for *Weaver*'s interpretation of section 12022.7, subdivision (g).

For these reasons, we conclude that no great bodily injury enhancement can attach to a conviction for murder or manslaughter.[3]

_____

*(footnote continued from previous page)*

we interpreted the statutes to make such juveniles who either commit *or* attempt to commit first degree murder eligible for a CYA commitment. (*Id*. at pp. 69-70.)

[3] We express no opinion regarding the question, not presented here, of whether and, if so, how great bodily injury enhancements may attach to other crimes for a defendant who is convicted of murder or manslaughter as well as those other crimes.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.  We also disapprove *People v. Julian*, *supra*, 198 Cal.App.4th 1524, *People v. Weaver*, *supra*, 149 Cal.App.4th 1301, and *People v. Verlinde*, *supra*, 100 Cal.App.4th 1146, to the extent they are inconsistent with this opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Cook
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 222 Cal.App.4th 1
**Rehearing Granted**

_____

**Opinion No.** S215927
**Date Filed:** February 5, 2015
_____

**Court:** Superior
**County:** Riverside
**Judge:** Dennis A. McConaghy*

_____

**Counsel:**

Thomas K. Macomber, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting, Lise Jacobson and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

*Retired judge of the Riverside Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Thomas K. Macomber
3403 Tenth Street, Suite 752
Riverside, CA  92501
(951) 314-3745

Tami Falkenstein Hennick
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2274