Filed 6/24/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082208 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD271741) |
| ISRAEL ACKERMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting, and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Israel Ackerman of attempted voluntary manslaughter (Pen. Code,[1] §§ 664, 192, subd. (a); count 1), among other crimes, and found true allegations that Ackerman personally inflicted great bodily injury within

---

[1] Statutory references are to the Penal Code unless otherwise specified.

the meaning of section 12022.7, subdivision (a). His sentence included a three-year term for the enhancement.

On appeal, Ackerman contends section 12022.7 prohibits trial courts from imposing a great bodily injury sentencing enhancement where the crime of conviction is attempted voluntary manslaughter. We disagree and, therefore, affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2017, Ackerman engaged in a verbal altercation with Anthony K. and then left.[2] He later returned, climbed up a ladder to the second-floor patio of an apartment in which Anthony was working, and made stabbing motions with a knife at Anthony. After Anthony hit Ackerman with a paint scraper, Ackerman stabbed Anthony four times and then pushed him against a glass window. Anthony eventually walked to a fire station while bleeding profusely, and police found Ackerman unconscious in the apartment. At trial, Ackerman argued that he acted in self-defense.

A jury convicted Ackerman of attempted voluntary manslaughter as a lesser included offense of attempted murder (§§ 664, 192, subd. (a); count 1), making a criminal threat (§ 422; count 2), and assault with a deadly weapon (§ 245, subd. (a)(1); count 3). The jury found true as to count 1 the allegation that Ackerman used a deadly and dangerous weapon (§ 12022, subd. (b)(1)). On counts 1 and 3, the jury found true allegations that Ackerman personally

---

[2] By amended motion, Ackerman requests that we take judicial notice of our unpublished decision in *People v. Ackerman* (Apr. 10, 2019, D073260). Because we rely on this opinion for the factual background of this case, we deny the request to judicially notice it and instead, on our own motion, augment the record to include the opinion. (Cal. Rules of Court, rule 8.155(a)(1)(A); see also *People v. Lewis* (2021) 11 Cal.5th 952, 958, fn. 2 [relying on brief summary of facts drawn from appellate court's prior opinion].)

inflicted great bodily injury (§ 12022.7, subd. (a)). Ackerman admitted that he previously suffered two probation denial priors (§ 1203, subd. (e)(4)), one prison prior (§§ 667.5, subd. (b), 668), one serious felony prior (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and one strike prior (§§ 667, subds. (b)–(i), 668, 1170.12).

In December 2017, the trial court sentenced Ackerman to an aggregate term of 20 years in prison, which included a three-year term for the personal infliction of great bodily injury enhancement attached to count 1.

While the appeal from his original sentence was pending, the Department of Corrections and Rehabilitation (CDCR) recommended Ackerman be resentenced, citing *People v. Cook* (2015) 60 Cal.4th 922 (*Cook*).[3] We did not address this recommendation in our prior unpublished opinion (*People v. Ackerman* (Apr. 10, 2019, D073260)) in which we reversed count 2 and remanded the matter with instructions for the trial court to exercise its discretion to determine whether to strike the five-year prior strike enhancement.[4]

On June 23, 2022, Ackerman filed a petition for writ of habeas corpus claiming the trial court erred by failing to resentence him pursuant to the CDCR letter. The CDCR had explained in its letter that Ackerman was convicted "of [murder, manslaughter, P[en.] C[ode] 451, P[en.] C[ode] 452, or

---

[3]    Ackerman also requests that we take judicial notice of the CDCR's letter, which was filed in the San Diego County Superior Court on September 6, 2018, and considered by the trial court. Because we discuss this letter in explaining the procedural background of this case, we again deny the request for judicial notice and, on our own motion, augment the record to include the letter. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

[4]    The People subsequently moved to dismiss count 2. On remand, the trial court dismissed count 2, declined to strike the five-year prior enhancement, and reaffirmed the sentence.

other crime with [the] element of 'infliction of great bodily injury'] (Pen. Code, § 664/192, subd. (a)), with an enhancement attached for infliction of great bodily injury (Pen. Code, §12022.7, subd. (a/b/c/d/e))." In its view, Ackerman was entitled to resentencing in light of the *Cook* case because it prohibited application of a section 12022.7 to a charge of manslaughter and any crime where infliction of great bodily injury was an element of the offense.

During a November 2022 hearing on the petition, the trial court offered its tentative view that *Cook* only applied to completed acts of manslaughter noting, "there's no . . . greater bodily injury than death." When the conviction was for attempt, however, the court implied great bodily injury was not necessarily an element. As it explained, "you can attempt to kill somebody or be involved in a manslaughter, not succeed and have very little damage and injury to the person." For this reason, the court concluded that *Cook* did not apply. It instead found persuasive the reasoning of *People v. Lewis* (1993) 21 Cal.App.4th 243, 247 (*Lewis*), which determined "there is no reason to construe section 12022.7 to exempt attempted manslaughter from the enhancement for infliction of great bodily injury."

The trial court then elicited argument from counsel. Defense counsel responded, "I did have the opportunity to read both cases and I looked into the statute as well to see if there was a different interpretation just from the statute. [¶] I do agree with the Court that I do think [great bodily injury] can attach to attempted voluntary but cannot to a complete voluntary." The prosecution also agreed, so the court ruled that the *Cook* case did not apply and the great bodily injury allegation could attach. It then resentenced Ackerman to 15 years in custody.

## DISCUSSION

Ackerman urges us to find that *Lewis* was wrongly decided and that section 12022.7 does not authorize the addition of a great bodily injury sentencing enhancement when the crime of conviction is attempted voluntary manslaughter. We decline to do so.[5]

The interpretation of a statute is a question of law subject to de novo review. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) " 'As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.' " (*People v. Cole* (2006) 38 Cal.4th 964, 974.) We first examine the statutory language and give it a plain and commonsense meaning. (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) In so doing, we consider the " ' "the entire substance of the statute . . . in order to determine the scope and purpose of the provision," ' " and we attempt to harmonize its various parts within the context of the statutory framework as a whole. (*People v. Arroyo* (2016) 62 Cal.4th 589, 595.) If the language of the statute is unambiguous, then the plain meaning controls. (*Cole*, at p. 975.)

---

[5] The People contend Ackerman forfeited any appellate objection to the great bodily injury enhancement by agreeing with the court during the November 2022 hearing that the enhancement "can attach to attempted voluntary but cannot to a complete voluntary." Ackerman counters that the issue remains cognizable because he challenges an unauthorized sentence. It is true we recognize a narrow exception to the forfeiture or waiver doctrine for unauthorized sentences that "could not lawfully be imposed under any circumstance in the particular case" because "such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Although it appears defense counsel in this case stated clearly based on research and experience that *Cook* did not alter the *Lewis* court's correct interpretation of section 12022.7, because Ackerman raises only a legal challenge to his sentence, we find the exception applies. Even if we did not, we would nonetheless exercise our discretion to address his contention on the merits.

5

Section 12022.7 provides that "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (*Id.*, subd. (a).) "As used in this section, 'great bodily injury' means a significant or substantial physical injury." (*Id.*, subd. (f).) Of particular relevance here, the statute further provides that "[t]his section shall not apply to murder or manslaughter or a violation of Section 451 or 452. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." (*Id.*, subd. (g).)

In *Lewis*, the First Appellate District considered the exact question presented here and concluded that the statute's language was clear and that attempted manslaughter was not exempted under section 12022.7, subdivision (g). (*Lewis*, *supra*, 21 Cal.App.4th at p. 247.) It stressed that prior courts had reached the same result in considering the analogous question of whether enhancements could be added to the crime of attempted murder. (*Id.* at pp. 247–248, citing *People v. Wells* (1983) 149 Cal.App.3d 497, 505 (*Wells*) and *People v. Allen* (1985) 165 Cal.App.3d 616, 631 (*Allen*).) The *Wells* court observed that whereas the first paragraph of section 12022.7 specifically stated that enhancements applied to individuals who inflicted great bodily injury during the attempted commission of a felony, the paragraph listing exempted crimes did not specifically include attempts. (*Wells*, at p. 505.) In the *Wells* court's view, "[t]his evidences an intent of the Legislature not to exclude attempted murder from the provisions of the section." (*Ibid.*) The *Allen* court agreed, noting that murder and attempted murder are separate crimes. (*Allen*, at p. 631.) In the face of this prior authority, and the fact that the Legislature had not altered the relevant

6

provisions of section 12022.7 following judicial construction of its provisions,[6] the *Lewis* court concluded there likewise was no reason to construe section 12022.7 to exempt attempted manslaughter from the enhancement for infliction of great bodily injury. (*Lewis*, at pp. 248–249.)

The question before our high court in *Cook* was "whether the sentence for the gross vehicular manslaughter of one victim may be enhanced for defendant's infliction of great bodily injury on other victims." (*Cook, supra,* 60 Cal.4th at p. 924.) In concluding it could not, our Supreme Court stated, "[s]ubdivision (g) means what it says—great bodily injury enhancements simply do not apply to murder or manslaughter." (*Id.* at p. 935.)

Although the high court did not have occasion to evaluate whether such enhancements could be applied to attempted versions of these crimes, Ackerman argues the *Cook* decision "interpreted section 12022.7[,] [subdivision] (g)'s exclusion very broadly" and relied on a decision in this appellate district, which observed that section 12022.7's legislative purpose " ' " 'is not to maximize punishment under every pleading artifice a prosecutor can devise, but instead to "deter[ ] the use of excessive force and the infliction of *additional harm beyond that inherent in the crime itself.*" ' " ' " (*Cook, supra,* 60 Cal.4th at p. 933, citing *Hale v. Superior Court* (2014) 225 Cal.App.4th 268, 275–276 (*Hale*).) Within this context, Ackerman contends the fact that the crime of voluntary manslaughter was incomplete does not negate the essential requirement that the defendant intended to use

[6] As the *Lewis* court correctly noted, " 'when as here " 'a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.' [Citations.] 'There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts.' " ' " (*People v. Favor* (2012) 54 Cal.4th 868, 879.)

excessive force against the victim.  He reasons that because the Legislature did not qualify "manslaughter" in subdivision (g) of section 12022.7 by listing the specific penal code sections applicable to this category of crimes—as it did with arson—it must have meant to broadly exclude all crimes involving manslaughter, including attempted manslaughter.

We conclude this argument is akin to the overanalyzed interpretations of the statute the *Cook* court expressly rejected in focusing on the "simple, unqualified language [section 12022.7, subdivision (g)] employed."  (*Cook*, *supra*, 60 Cal.4th at p. 935 [noting that other courts had "criticized [*People v.*] *Beltran* [(2000) 82 Cal.App.4th 693] for relying exclusively on section 12022.7, subdivision (g)'s language without additional substantive reasoning, but doing so was reasonable given the simplicity and clarity of that language"].)  In other words, we take a different view of the word "unqualified" than Ackerman and conclude that no additional reasoning is required to understand the terms of subdivision (g).  Its plain language exempts only the completed crimes of murder and manslaughter, violations of sections 451 and 452, and crimes where infliction of great bodily injury is an element of the offense.  (§ 12022.7, subd. (g).)

Regardless of whether a defendant *intended* to use excessive force, the fact remains that actual *infliction* of great bodily injury is not an element of the crime of attempted voluntary manslaughter, as it is for all other kinds of manslaughter.  Thus, the legislative purpose stated in *Hale*, and cited with approval in *Cook*, of deterring individuals from using excessive force *and inflicting harm* beyond that inherent in the crime would still be achieved by allowing a section 12022.7 enhancement to be added to a charge of *attempted* voluntary manslaughter.  Stated differently, it would be in keeping with this legislative intent to impose greater punishment upon someone who attempts

8

to use deadly force (either in the unreasonable belief in the need for self-defense or in a heat of passion) and fails to kill the person but causes significant or substantial physical injury, than upon someone who did not harm their victim. To exempt attempted voluntary manslaughter, on the other hand, would fail to achieve the deterrent effect. Ackerman's selective reading of *Hale*, which ignores the second part of the sentence regarding "the infliction of *additional harm beyond that inherent in the crime itself*" (*Hale*, *supra*, 225 Cal.App.4th at pp. 275–276), does not persuade us otherwise because, again, harm is not necessarily inherent in the crime of attempted voluntary manslaughter.

In Ackerman's view, reading "manslaughter" to mean only the completed crime of manslaughter runs afoul of the canon of statutory interpretation discouraging surplusage. Specifically, he argues such a construction would render the term "manslaughter" superfluous in view of the catch-all provision in the second sentence of section 12022.7, subdivision (g) which exempts all crimes for which "infliction of great bodily injury is an element of the offense." Ackerman is correct that a longstanding canon of statutory interpretation advises that "[a] construction making some words surplusage is to be avoided." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.) We also understand the point that the second sentence of section 12022.7, subdivision (g) renders the portion of the first sentence excluding murder and manslaughter somewhat redundant. That said, our high court has repeatedly and recently made clear that " 'the canon against surplusage is [merely] a guide to statutory interpretation and is not invariably controlling.' [Citation.] We will not use it 'to defeat legislative intent' as gleaned from available sources, including the rest of the words in the statute, related statutes, the 'legislative history and

9

the "wider historical circumstances" of the enactment.' " (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 21; see also *People v. Reynoza* (2024) 15 Cal.5th 982.)

Here, it appears there is little question the Legislature considered whether subdivision (g) of section 12022.7 should apply to attempt crimes and purposefully determined it should not. This is not a situation where it is uncertain from the context whether attempt crimes were even on the Legislature's radar when it drafted the statute. To the contrary, the Legislature expressly discussed "attempted felon[ies]" in section 12022.7, subdivisions (a) through (e). Generally, under another governing principle of statutory construction, " 'the expression of one thing in a statute ordinarily implies the exclusion of other things. [Citation.]' " (*People v. Guzman* (2005) 35 Cal.4th 577, 588.) Thus, the Legislature's inclusion of attempted felonies in subdivisions (a) through (e) but not in subdivision (g) of section 12022.7 implies that attempted manslaughter was intentionally excluded from the latter.

The problem Ackerman cites with adopting this reading of the statute is that it would result in absurd consequences. Our Supreme Court has "often said that courts will not give statutory language a literal meaning if doing so would result in absurd consequences that the Legislature could not have intended." (*In re J.W.* (2002) 29 Cal.4th 200, 210.) Ackerman points out that a conviction for attempted voluntary manslaughter with a section 12022.7, subdivision (a) enhancement is subject to a six-year sentence (§§ 664, 193, subd. (a), 12022.7, subd. (a)), which is the same term likely to be imposed under the middle term for the completed crime of voluntary manslaughter (§ 193, subd. (a)). If the defendant caused great bodily injury to an individual over the age of 70 in the course of an attempted voluntary

10

manslaughter, a consecutive five-year enhancement could be added
(§ 12022.7, subd. (c)), resulting in a sentence greater than that for voluntary
manslaughter. Furthermore, relying on the *Lewis* dissent, Ackerman argues
that authorizing courts to increase the sentence for an attempted
manslaughter conviction by adding a section 12022.7 enhancement
disregards the Legislature's clear intention to impose lesser sentences for the
attempted versions of manslaughter crimes. (See § 664 [proscribing
punishment for most attempted felonies of one-half the term of imprisonment
required for the offense attempted] and *Lewis, supra,* 21 Cal.App.4th at
p. 257.)

We disagree this circumstance warrants invoking the absurdity
exception of statutory construction. According to the probation report in this
case, the triad of sentencing options for the attempted manslaughter
conviction was 18 months, 3 years, or 5 years and 6 months. The addition of
a 3-year enhancement to these terms would yield options of 4 years and
6 months, 6 years, and 8 years and 6 months. Because the sentence for
voluntary manslaughter would be double the attempted voluntary
manslaughter sentence, the triad for that crime would be 3 years, 6 years, or
11 years. Thus, only the enhanced low term of 4 years and 6 months is above
the comparable sentence for voluntary manslaughter. The middle term
would be the same and the upper term of 11 years for voluntary
manslaughter exceeds the enhanced upper term for attempted voluntary
manslaughter.

We do not find this to be an absurd result the Legislature could not
have intended. Although the Legislature expressed an intent to impose
one-half of the full sentence when the defendant "attempts to commit any
crime, but fails," (§ 664), we can reasonably infer it intended to impose a

11

greater sentence where the defendant failed to kill the victim but left the victim suffering from great bodily harm. Indeed, the Legislature expressly authorized this result for other attempt crimes in section 12022.7, subdivision (a). The same is true for the greater enhancements for those over 70 years of age or under five years old. (§ 12022.7, subds. (c), (d).) The latter enhancements also demonstrate a rational legislative intent because these victims are particularly vulnerable and may require greater care to recover from a great bodily injury. " 'Moreover, our courts have wisely cautioned that the absurdity exception to the plain meaning rule "should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. [Citation.] We do not sit as a 'super-legislature.' [Citation.]" ' " (*Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 356; accord *People v. Heard* (2022) 83 Cal.App.5th 608, 626.) The sentencing outcomes here are not excessively disproportionate and are in keeping with the legislative intent apparent from the language of the statute. Accordingly, we conclude this is not the type of extreme case warranting application of the absurdity exception.

Ackerman takes a somewhat opposite tack in his reply brief, arguing that allowing great bodily injury enhancements to attempted voluntary manslaughter convictions does not serve a deterrent purpose because the prosecutor does not actually obtain increased punishment under this sentencing scheme. He points out that if the prosecutor pursued different charges, such as assault with a deadly weapon (§ 245, subd. (a)(1)) plus a great bodily injury enhancement under the elder abuse statute (§ 368, subd. (b)(2)(B)), the court could impose the same sentence it would for an attempted voluntary manslaughter conviction with a great bodily injury

12

enhancement involving a victim over 70 years of age (§§ 664, 193, subd. (a), 12022.7, subd. (c)).

As an initial matter, this argument undercuts Ackerman's claim that enhanced attempted voluntary manslaughter sentences are so high as to be absurd. Furthermore, we disagree the enhancements fail to serve a deterrent effect simply because prosecutors could exercise their discretion to charge under other provisions Ackerman considers more narrowly tailored to the challenged conduct and achieve the same sentences. This case is not analogous to *Cook*, where our high court found fault with a prosecutor's charging choice because the attorney opted to charge the defendant with voluntary manslaughter and then tack on enhancements relevant to *other* victims, instead of charging the defendant separately for each crime against each victim. (Cf. *Cook*, *supra*, 60 Cal.4th at p. 936.) Here, there was one victim, and each sentence separately punishes Ackerman for the harm caused to that victim under the relevant statute. Within this framework, the *Lewis* court's commonsense interpretation of section 12022.7's plain language serves the intended deterrent effect.

Ultimately, as the *Hale* court explained and the *Cook* court acknowledged, "it appears that no interpretation of section 12022.7, subdivision (g), is guaranteed to eliminate all possible anomalies" (*Cook*, *supra*, 60 Cal.4th at p. 938, citing *Hale*, *supra*, 225 Cal. App.4th at pp. 276–277), but that does not render the statute ambiguous or our construction absurd. Ackerman would have us interpret section 12022.7, subdivision (g) to read in the word "attempted" before murder and manslaughter where the term is not present, while the *Lewis* court's construction renders the exceptions for "murder and manslaughter" somewhat redundant in light of the second sentence of section 12022.7,

13

subdivision (g). In such situations, "[t]he intent of the law prevails over the letter of the law, and 'the letter will, if possible, be so read as to conform to the spirit of the act. [Citation.]' " (*People v. Canty* (2004) 32 Cal.4th 1266, 1276–1277.) Here, we conclude the Legislature intended to prohibit great bodily injury enhancements only when great bodily injury is an element of the offense. In exempting manslaughter and the other specific crimes, we believe the Legislature intended only to emphasize these exceptions, not to imply so broad an interpretation of manslaughter that it included the categorically different crime of attempted manslaughter. Because section 12022.7, subdivision (g)'s otherwise "clear reading is the unqualified statement that the great bodily injury enhancement 'shall not apply to murder or manslaughter' " (*Cook*, at p. 935), we believe the *Lewis* court correctly interpreted the statute.

DISPOSITION

The judgment is affirmed.


HUFFMAN, J.


WE CONCUR:


McCONNELL, P. J.


IRION, J.