Filed 4/7/16  P. v. LeBeau CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>LOREN JOSEPH LEBEAU,<br><br>        Defendant and Appellant. | F068345<br><br>(Super. Ct. No. F12905888)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Gregory T. Fain, Judge.

Nuttall & Coleman and Roger T. Nuttall for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

On July 25, 2012, appellant Loren Joseph LeBeau was operating a vehicle at night in Fresno, California, when he struck Jesse Guadalupe Maldonado, Donovan Michael

Maldonado, and Jesse's minor daughter, Bella, who were riding bicycles in a crosswalk.[1] Donovan, who was seven years old, rode his own bicycle while 19-month-old Bella rode on the back of Jesse's bicycle. Donovan was dragged by appellant's vehicle approximately 800 feet and died later that night. Jesse and Bella sustained serious injuries. Appellant initially drove away but then returned to the accident scene after emergency personnel had arrived. A police officer spoke with appellant, who displayed signs of intoxication. He was arrested and his blood sample was drawn. A subsequent toxicology report indicated he had a blood-alcohol level of .11 percent.

On June 12, 2013, appellant entered pleas of no contest to gross vehicular manslaughter while intoxicated (Pen. Code, §191.5, subd. (a); count 1); driving under the influence causing injury (Veh. Code, § 23153, subd. (a); count 2); driving with a .08 percent blood-alcohol level causing injury (Veh. Code, § 23153, subd. (b); count 3); and leaving the scene of an accident resulting in death (Veh. Code, § 20001, subd. (a); count 4).

Appellant admitted as true the following enhancements: As to count 1, that he fled the scene of the crime (Veh. Code, § 20001, subd. (c)) and personally inflicted great bodily injury on a person (Pen. Code, § 1192.8, subd. (a)); as to counts 2, 3 and 4, that he personally inflicted great bodily injury upon Jesse and Donovan (Pen. Code, § 12022.7, subd. (a)); and as to counts 2 and 3, that he personally inflicted great bodily injury upon Bella. (Pen. Code, § 12022.7, subd. (d).)

Appellant was sentenced to a stipulated aggregate term of 12 years in state prison. As is relevant to the issues raised in the present appeal, appellant received in count 2 a one-year enhancement under Penal Code section 12022.7, subdivision (a), for the great bodily injury inflicted upon Jesse and a 16-month enhancement under Penal Code

---

[1] These facts are taken from the report of the probation officer, who obtained this information from the Fresno Police Department crime report and the preliminary hearing transcripts.

section 12022.7, subdivision (d), for the great bodily injury inflicted upon Bella. Sentence on the remaining enhancements pursuant to Penal Code section 12022.7, subdivisions (a) and (d), were stayed pursuant to Penal Code section 654.

Appellant raises two general issues on appeal. First, he argues the trial court abused its discretion in denying a continuance which his trial counsel orally requested at the start of the sentencing hearing. Second, he contends the sentence enhancements imposed against him pursuant to Penal Code section 12022.7 were improper. Although we disagree that the sentence enhancements were improper, we agree that the trial court abused its discretion in denying the requested continuance. Because appellant was denied an opportunity to file a motion to withdraw his plea, we remand the matter for that limited purpose. In the event appellant files no such motion, or it is denied by the superior court, the judgment shall stand affirmed. In that event, a clerical error appears in the abstract of judgment, which the trial court shall amend as discussed below.

## PROCEDURAL BACKGROUND

On August 29, 2013, appellant's sentencing hearing occurred. Early in the hearing, defense counsel stated the following:

> "[DEFENSE COUNSEL]: And, Your Honor, as the Court recalls, this matter was set for trial prior to the time that I wanted it set for trial. I asked that it not be because there were things going on in the civil case that were developing, and I found out about something that I at least wanted to look into. I don't think it will ultimately change anything in the case, but that I wanted to look at before going forward with the sentencing.

> "I'd be willing or be asking for either a continuance or if the Court is not inclined to do so to at least allow me to make a record in camera as to the basis for that and what information I obtained and how I obtained it. Again, I don't think that it will effect [*sic*] the outcome of the case or any efforts to withdraw plea, but to do my job properly, I feel like I have to cover that base.

> "THE COURT: Okay.

3.

"[DEFENSE COUNSEL]: And on that basis, I'm making the request to continue sentencing.

"THE COURT: How long are you asking the Court to continue the sentencing on this matter?

"[DEFENSE COUNSEL]: I would ask for 30 days.

"THE COURT: Okay. And I just want to confirm, I have checked. There's -- at this point in time there's no written motion to continue or motion to 1058 of the Penal Code. There's nothing of that nature.

"[DEFENSE COUNSEL]: Correct.

"THE COURT: I haven't read it.

"[DEFENSE COUNSEL]: Right. The information I received was night before last, and it was after work the night before last. So I didn't have time to do a two-day written motion to the Court. I did advise [the prosecutor] yesterday it was going to be my intent to request a continuance today, and I advised your clerk that --

"THE COURT: Yes, you did.

"[DEFENSE COUNSEL]: -- that I would be requesting a continuance, and that I expected [the prosecutor] to object."

The court confirmed that it was informed by the clerk about the request the day before, and the following occurred:

"[PROSECUTOR]: We would object, Your Honor. Apart from this being an 11th hour request, months after the plea was taken, the Maldonado family has no interest in the matter continuing and want to see resolution to this on their end. And as counsel actually just stated, he doesn't think that whatever he's talking about would effect [*sic*] the outcome of the case. So I'm objecting."

The trial court noted that the victims' family members and parties from both sides were in the packed courtroom. The court asked the prosecutor to comment on defense counsel's request to hold an in camera discussion regarding the specifics of the motion to continue. The following occurred:

4.

"[PROSECUTOR]: I would say initially he's late in his request. There are no supporting documentation. And back to my 11th hour commentary, it's untimely and brought at the worst of times actually for that matter.

"THE COURT: Okay. [Prosecutor?]

"[DEFENSE COUNSEL]: May I respond to that?

"THE COURT: Yes, you may.

"[DEFENSE COUNSEL]: The first information I had was the night before last. Yesterday, I made additional calls or on -- the [person] I was trying to speak with was on vacation. He returns today. I left a message. I have not heard back from him. The other person that I needed to speak with, I left a message for, and he called me this morning as I was walking to court.

"So some of the information I have is as recent as about 8:27 this morning. So I could not have -- I really couldn't have written a motion prior to having the necessary information. But that's what I'd like to make an in camera record of. If the Court -- for appellate purposes, if the Court is inclined to deny the continuance or wants to hear what that is before deciding.

"THE COURT: Okay. All right. Thank you. Is there anything else?

"[PROSECUTOR]: No, Your Honor."

The trial court noted that Penal Code section 1050, subdivision (a), required a motion to continue to be brought "at the earliest possible time" and must be in writing with service of the supporting declarations and affidavits at least two days before the hearing. The court stated the parties last met on June 12, 2013, and the report and recommendation of probation was set over until August 29, 2013, noting the time was longer than normal due to the busy schedules of both counsel, to ensure that both parties were prepared for sentencing, and to keep the court's calendar clear for the hearing. The court realized that "things do pop up" at the last moment, but the matter had been pending for over a year with a number of continuances so the parties could conduct their

5.

investigations and be prepared.  The court denied the request for continuance, stating everybody was present and ready to proceed, and the requirements of Penal Code section 1050 had not been met.

The following exchange occurred:

"[DEFENSE COUNSEL]:  I do want to put on the record the Court is saying that I should have given two days' notice for something I didn't have two days notice of.

"THE COURT:  I think I've clearly quoted the law on this, 'at the earliest possible time.'  And two days' written notice is required before the hearing.  And I think overall in the interests of justice, this is my call on whether or not to grant a continuance.  And this is one where I'm not -- I'm exercising my discretion in an overall scheme of things not to grant one.

"Okay.  Now, in regard to your second -- the second prong of your request, as far as an in camera discussion, that's something I haven't dealt with before in terms of these type of things.  Occasionally I have -- file under seal, all attorney work product and things of that nature, and I'm, of course, respectful of, you know, the professional way you go about things.

"Nobody is criticizing you at all, but I just think that given where we are in terms of the sentencing, I can allow you to make an appropriate record if you wish.  I'm just concerned about the request to do it in camera without the People being present.  That is concerning to me, and I don't know that that's an appropriate procedure in any event.  I haven't dealt with that before.  I haven't dealt with that specifically in this type of case, this type of criminal case.

"And so my view is that this -- it's really not in the interests of justice to continue this case given how long it has been pending, given how long the matter was set between plea and sentencing.  The fact that we have multiple people here ready to be heard.  Fact that the People are objecting.  The victims' family is objecting.  To me, I'm not at all comfortable in continuing the case, and as to that second prong, I'll hear from both parties if anybody wants to be heard on the appropriateness before we go any further.  Obviously I haven't heard what it is that [defense counsel] has not chosen to reveal here in court here today, but if anybody wants to be heard further on that in the in camera as to whether that would have a bearing on the Court's initial analysis, I'll hear from you both on that right now.  Okay.  But under a [Penal Code section] 1050 analysis, there is not good

6.

cause for the continuance as I see it as the [*sic*] exists right now. So did you want --

"[DEFENSE COUNSEL]: Would the Court now allow me to make an in camera record? I'm just going to put on the record that I'm aware, and I became aware the night before last that the -- there was an [*sic*] reenactment done, that the costs are approximately $50,000 that I have not been able to see but would be able to see in the next 30 days. And the reenactment was done in the basically same lighting, all the same conditions. And what I was told by [appellant's] civil defense attorney was such that if this case wasn't on the date of sentencing and he hadn't pled yet, there is no way that I would have recommended that he plead without first viewing that video. And now I have an opportunity to view that in the next 30 days.

"THE COURT: That's from the civil attorney?

"[DEFENSE COUNSEL]: Correct.

"THE COURT: Okay. All right.

"[DEFENSE COUNSEL]: And with them doing a reenactment, we did not have the resources to do a reenactment to do the same thing twice, and whether it would change anything, I don't know. But if that had been available to me, I certainly would have wanted to view it from the standpoint of properly advising my client, and it's become available, and that's the issue.

"THE COURT: Okay, [defense counsel]. Thank you. [Prosecutor].

"[PROSECUTOR]: Well, reenactments are typically done in civil cases and usually involve a lot more drama than you see in criminal cases. In criminal cases you deal with evidence. The evidence is presented to the defense in documentation form: photographs, extended investigation reports with multiple photographs of the scene, essentially reenactments in words as to what occurred. I don't see the basis for continuing the matter based on what's been represented today.

"THE COURT: All right. I have enough information. I -- at this point in time, I am not granting the motion to continue. I don't think that this is timely. I think that the overall interests of justice of the case call for us to go forward with the sentencing at this time. Sentencing hearing's been scheduled for months, and your request to continue is denied.

"I also take note of the fact that, you know, the overall nature of the request, whether we would or would not change any decision to file a motion to withdraw plea, and whether that would ever even be granted. I believe that for criminal case purposes, there has been a lot of time allowed for discovery and completion of criminal discovery, over a year in fact, and I'm not going to allow a continuance. So motion to continue is denied."

Shortly after the trial court ruled, the prosecutor noted "for the record" that the reenactment which defense counsel referenced was done "weeks and weeks ago, and I had heard about it myself." The prosecutor noted that appellant's defense counsel had been in contact with civil counsel "over this case over the long haul." Defense counsel responded that "I heard for it the first time the night before last." The court then proceeded with the sentencing hearing.

## **DISCUSSION**

### I.     The Trial Court Abused Its Discretion In Denying A Continuance.

Appellant contends the trial court abused its discretion in denying his oral request to continue the sentencing hearing. He asserts his judgment should be reversed and the matter remanded for defense counsel to have time to investigate and evaluate all new evidence available, and submit a motion to withdraw his pleas should the new evidence warrant that decision.

### A.     Standard of review.

A criminal case may be continued only upon a showing of good cause. (Pen. Code, § 1050, subd. (e).) It is within the trial court's discretion to determine whether good cause exists. (*People v. Beames* (2007) 40 Cal.4th 907, 920.) The defendant bears the burden of establishing that a denied continuance was an abuse of discretion, and a defendant can rarely successfully attack such a denial. (*Ibid*.) An abuse of discretion occurs when the trial court "exceeds the bounds of reason" after all circumstances are considered. (*Ibid*.) A denied continuance may be so arbitrary as to deny due process, but not every denied continuance violates due process even if the party is unable to offer evidence as a result. (*Id.* at p. 921.) To determine if a denied continuance violates due

8.

process, the circumstances of the case must be examined, "'particularly in the reasons presented to the trial judge at the time the request is denied.' [Citations.]" (*Ibid.*)

### B.    Analysis.

In the context of a requested trial continuance, the trial court must consider the benefit which the moving party anticipates and the likelihood such a benefit will occur, the burden on the witnesses, jurors and the court, and, most importantly, whether substantial justice will be accomplished or defeated in granting the motion. (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) A trial court may not exercise its discretion in a manner that deprives the defendant of a reasonable opportunity to prepare. (*Ibid.*) In determining if an abuse of discretion occurred in denying a continuance, all circumstances must be considered, with particular importance placed on the reasons presented to the court at the time the continuance was sought. (*People v. Beames, supra,* 40 Cal.4th at pp. 920-921.)

Appellant raises several contentions on appeal regarding how the trial court erred or abused its discretion in denying the requested continuance. We find compelling his argument that the continuance should have been granted in the interest of justice. He asserts a continuance would have provided the defense an opportunity to review the reenactment video, which may have allowed him to withdraw his plea and/or negotiate better terms to settle the matter. He notes the reenactment video could have clarified key facts which were central to the issue of proximate cause. Based on testimony from the preliminary hearing, the accident scene was poorly lit, the victims' bicycles did not have lights, and a sign near the crosswalk informed pedestrians that vehicles on that particular avenue had the right of way.

Respondent contends the trial court was justified in denying the continuance because many people were present at sentencing and ready to speak. The prosecution and the victims' family objected to a continuance. The sentencing hearing had been set for more than two and a half months to ensure time for the parties to prepare, and

9.

criminal discovery had been completed. Respondent argues appellant's counsel had sufficient opportunity to file a timely continuance motion and prepare for sentencing because the prosecutor said the reenactment video had been completed weeks prior to sentencing.

We are mindful that the victims and their family members were entitled to a prompt and final conclusion to the case. Given the grave nature of this crime, we understand the impact it had on everyone involved. Requiring everyone to return for a continued sentencing hearing would have impacted the court, the victims and the respective family members.

We must, however, balance the competing interests. The change of plea occurred on June 12, 2013, and the case had been pending for just over one year when the sentencing hearing occurred on August 29, 2013. This record does not reflect ongoing or considerable delay in the prosecution of this matter. No previous request had been made to continue the sentencing hearing. Appellant's counsel alerted the trial court that the video reenactment existed and he had just learned of it. Most importantly, the trial court was informed that appellant's civil defense attorney had said, " . . . if this case wasn't on the date of sentencing and [appellant] hadn't pled yet, there is no way that I would have recommended that he plead without first viewing that video."

Through the statement from appellant's civil defense counsel, it was suggested the video could have impacted the plea agreement. On balance, a reasonable continuance was important to protect appellant's rights despite the delay it would cause. Denying the requested continuance deprived appellant's criminal counsel of a reasonable opportunity to prepare. (See generally *People v. Murphy* (1963) 59 Cal.2d 818, 825 [defense counsel must be afforded a reasonable opportunity to prepare, which is as fundamental as the right to counsel].)

Although defense counsel initially said he did not think the video would change anything in the case, he also stated he had not yet seen it. We do not fault defense

10.

counsel for not making stronger statements regarding the potential impact of the video. To the contrary, defense counsel made it clear that viewing the video was important before sentencing to ensure all facts were known before the case proceeded.

Under the circumstances of this case, substantial justice would have been accomplished if the continuance was granted. We cannot say that substantial justice occurred with the denial. (See *People v. Doolin, supra,* 45 Cal.4th at p. 450 [the most important consideration in granting or denying a continuance is whether substantial justice will result].) An abuse of discretion occurred. Accordingly, we remand the matter for the limited purpose of affording appellant an opportunity to file a motion to withdraw his plea. Any such motion must be filed in the superior court on or before 60 calendar days of the issuance of the remittitur. If appellant files no such motion within that time, or if the motion is denied, the judgment is affirmed.[2]

## II.    Application of Penal Code Section 12022.7 Was Proper In This Case.

Appellant contends that Penal Code section 12022.7 should not have applied in his case, arguing its application was both unconstitutional and beyond its statutory constraints. He seeks reversal of the Penal Code section 12022.7 enhancements to his sentence.

### A.    Background.

As is relevant to this issue, the first amended information alleged enhancements pursuant to Penal Code section 12022.7 in counts 2 through 4. As to counts 2, 3 and 4, it was alleged that appellant "personally inflicted great bodily injury upon" Jesse and Donovan (Pen. Code, § 12022.7, subd. (a)). As to counts 2 and 3, it was alleged that appellant "personally inflicted great bodily injury upon" Bella (Pen. Code, § 12022.7, subd. (d)). Appellant admitted as true each of these enhancement allegations.

---

[2]    We express no opinion regarding the accident reconstruction video, which is not part of the record before this court.

11.

As part of the stipulated aggregate term of 12 years in state prison, appellant received a one-year enhancement to count 2 under Penal Code section 12022.7, subdivision (a), for the great bodily injury inflicted upon Jesse.  In addition, appellant received a 16-month enhancement to count 2 under Penal Code section 12022.7, subdivision (d), for the great bodily injury inflicted upon Bella.  Sentence on the remaining enhancements pursuant to Penal Code section 12022.7, subdivisions (a) and (d), were stayed pursuant to Penal Code section 654.

**B.     Standard of review.**

A statutory enhancement is different from a substantive crime because enhancement provisions do not define criminal acts.  (*People v. Ahmed* (2011) 53 Cal.4th 156, 163.)  Instead, an enhancement increases the punishment for the criminal act and focuses "on *aspects* of the criminal act that are not always present and that warrant additional punishment.  [Citations.]"  (*Ibid.*)

The interpretation of a statute is an issue of law which an appellate court decides de novo.  (*People v. Akhile* (2008) 167 Cal.App.4th 558, 562.)

**C.     Analysis.**

Appellant asserts that the clear and plain language of Penal Code section 12022.7, subdivision (g), establishes that he should not have been punished regardless of the alleged victim.  He relies upon *People v. Cook* (2015) 60 Cal.4th 922 (*Cook*), a decision filed after his sentencing hearing, as authority that his sentence is improper regarding Penal Code section 12022.7.  He claims he did not waive this issue on appeal given the subsequent change in the law.

Respondent contends appellant is estopped from complaining about his sentence on appeal because he voluntarily negotiated the benefit of a specific prison term.  Respondent also submits that imposition of the enhancements pursuant to Penal Code section 12022.7 was proper because no great bodily injury enhancements were imposed in count 1.

We need not resolve the parties' dispute regarding whether appellant has either waived or is estopped from raising this claim on appeal because, when we analyze the merits of appellant's arguments, they are unpersuasive.

Penal Code section 12022.7, subdivision (a), provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Penal Code section 12022.7, subdivision (g), provides: "This section shall not apply to murder or manslaughter or a violation of [Penal Code] Section 451 [(arson)] or [Penal Code Section] 452 [(unlawfully causing a fire)]. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." Penal Code section 12022.7 defines "great bodily injury" as "a significant or substantial physical injury." (Pen. Code, § 12022.7, subd. (f).)

In *Cook, supra,* 60 Cal.4th 922, the defendant was involved in an automobile accident in which three persons were killed and a fourth was seriously injured. The jury found that the defendant caused the accident by speeding and driving recklessly. The defendant was convicted of three counts of gross vehicular manslaughter, one count for each of the deceased victims. Regarding the first count, the jury also found true three allegations that the defendant personally inflicted great bodily injury. Two of these allegations related to the two victims who died and were the subject of the other two manslaughter convictions, while the third related to the victim who survived. (*Id.* at pp. 924-925.) The defendant was sentenced to state prison for an aggregate term of nine years eight months, including three years for the great bodily injury enhancement as to the victim who survived. The court struck punishment for the great bodily injury enhancements for the victims who died. (*Id.* at p. 925.) The defendant appealed, contending Penal Code section 12022.7, subdivision (g), prohibited all of the great bodily injury enhancements. (*Cook, supra,* 60 Cal.4th at p. 925.) The Court of Appeal upheld

13.

the enhancement as to the surviving victim, but reversed the enhancements as to the manslaughter victims. The Attorney General appealed.

The *Cook* court noted that a murder or manslaughter conviction may not be enhanced under Penal Code section 12022.7, subdivision (g), for inflicting great bodily injury on the victim who is the subject of that conviction. (*Cook, supra,* 60 Cal.4th at p. 925.) *Cook* then examined the specific question regarding "when, if ever, a manslaughter conviction may be enhanced for the infliction of great bodily injury on *other* victims during the commission of the manslaughter." (*Ibid.*) *Cook* noted that the statutory language of Penal Code section 12022.7, subdivision (g), was plain and states that an enhancement for great bodily injury """*shall not apply* to murder or manslaughter …." [Citation.]'" (*Cook, supra,* at p. 933.) Penal Code section 12022.7, subdivision (g) further states a great bodily injury enhancement """*shall not apply*"" if an element of the offense includes infliction of great bodily injury. (*Cook, supra,* at p. 933.) "'Great bodily injury is by definition inherent in a murder or manslaughter victim's injuries that result in death. Consequently, great bodily injury is necessarily proven when the victim's death is proven as an element of those offenses. By statutory command, a [great bodily injury] enhancement therefore "shall not apply." (Subd. (g).) We must give effect to this plain language.' [Citation.]" (*Ibid.*) Following its analysis, *Cook* concluded "that no great bodily injury enhancement can attach to a conviction for murder or manslaughter." (*Id.* at p. 938.) In a final footnote, *Cook* stated, "We express no opinion regarding the question, not presented here, of whether and, if so, how great bodily injury enhancements may attach to other crimes for a defendant who is convicted of murder or manslaughter as well as those other crimes." (*Id.* at p. 938, fn. 3.)

Here, a great bodily injury enhancement was not imposed against appellant for his conviction in count 1 of gross vehicular manslaughter while intoxicated. As such, *Cook* is distinguishable and does not establish a sentencing error. Indeed, the final footnote in *Cook* states that the Supreme Court did not address the very issue raised in appellant's

14.

present appeal. Thus, we must analyze whether the statutory language of Penal Code section 12022.7 prohibits imposition of its enhancement as to the remaining counts against appellant.

The Legislature made Penal Code section 12022.7 inapplicable to murder, manslaughter, arson or unlawfully causing a fire. In addition, Penal Code section 12022.7, subdivisions (a), (b), (c), and (d), do not apply when "infliction of great bodily injury is an element of the offense." (Pen. Code, § 12022.7, subd. (g).)

In count 2, appellant was convicted of violating Vehicle Code section 23153, subdivision (a). This makes it "unlawful for a person, while under the influence of any alcoholic beverage to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver." (Veh. Code, § 23153, subd. (a).)

In count 3, appellant was convicted of violating Vehicle Code section 23153, subdivision (b). This makes it "unlawful for a person, while having 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver." (Veh. Code, § 23153, subd. (b).)

In count 4, appellant was convicted of violating Vehicle Code section 20001, subdivision (a). Under this section, "[t]he driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of [Vehicle Code] Sections 20003 and 20004." (Veh. Code, § 20001, subd. (a).)

We begin our analysis with the scope of statutory interpretation. "When construing a statute, our job is 'simply to ascertain and declare what is in terms or in

substance contained therein, not to insert what has been omitted, or to omit what has been inserted ….'" (*People v. Bell* (2015) 241 Cal.App.4th 315, 321, quoting Code Civ. Proc., § 1858.) We are to follow the Legislature's intent as expressed by the plain meaning of the actual words and to give the words "'"their usual and ordinary meaning."'" (*People v. Loeun* (1997) 17 Cal.4th 1, 9.) If there is no ambiguity in the statute's language, we presume the Legislature intended that meaning and that plain meaning controls. (*Ibid.*) We will not find ambiguity where none exists. (*Ibid.*)

Here, the plain language of Vehicle Code section 23153, subdivisions (a) and (b), and Vehicle Code section 20001, subdivision (a), establish that "great" bodily injury is not an element for conviction. Further, neither deals with murder, manslaughter, arson or unlawfully causing a fire. No ambiguity appears in the text of these statutes. As such, the express terms of Penal Code section 12022.7, subdivision (g), did not prevent imposition of the sentence enhancements against appellant for the great bodily injury inflicted upon Jesse and Bella in counts 2 through 4.

We are cognizant of, and appellant points out, that Vehicle Code section 20001, subdivision (a), applies to any degree of injury, including death. Our Supreme Court has stated that the term "great bodily injury" necessarily includes any injuries that result in death. (*Cook, supra,* 60 Cal.4th at p. 933.) However, Vehicle Code section 20001 "governs a number of situations, one of which is automobile accidents resulting in death. Clearly, not rendering aid to a dead person (assuming death has already occurred) is not by itself what is criminalized by the statute. [Vehicle Code] [s]ection 20001, with its incorporation by reference of [Vehicle Code] section 20003, criminalizes a number of obligations a person involved in an accident is required, if feasible or necessary, to do: (1) stop, (2) identify themselves, any injured passengers, and vehicle registration, (3) render aid, and (4) provide transportation for an injured person. [Citation.] Clearly, not rendering aid to a dead person (assuming death has not already occurred) is not the

sole omission which can result in a violation of [Vehicle Code] section 20001." (*People v. Harbert* (2009) 170 Cal.App.4th 42, 59.)

Moreover, the enhancement under Penal Code section 12022.7 applies only to those who personally inflict great bodily injury, which is not required in Vehicle Code section 20001. (*People v. Harbert, supra,* 170 Cal.App.4th at p. 59.) "The respective spheres of the two statutes operation may overlap, yet they are far from coextensive. When they do overlap, as occurred here, Penal Code section 654 becomes operative. Conviction for both is proper, and imposition of separate sentences for each is proper. But actual punishment, i.e., service of those separate sentences, is not. The appropriate course … is to stay execution of the sentences. [Citation.]" (*Ibid.*)

Here, great bodily injury is not an element for conviction of Vehicle Code section 20001, subdivision (a). Accordingly, the enhancements pursuant to Penal Code section 12022.7 will not be reversed.[3]

### III.   The Abstract Of Judgment Must Be Amended.

At sentencing, the court imposed a total term of five years for count 4, which consisted of a two-year term under Vehicle Code section 20001, subdivision (a), and a

---

[3]   In his supplemental reply brief, appellant contends this enhancement should not be imposed based upon a strict reading of the title of Penal Code section 12022.7. Deering's California Codes Annotated titles this statute: "Bodily harm inflicted during commission of felony not having bodily harm as an element." In contrast, West's Annotated California Codes titles this statute: "Terms of imprisonment for persons inflicting great bodily injury while committing or attempting felony." Appellant cites authority and argues that this section's title controls the subject of the statute. Based on the title, appellant contends Penal Code section 12022.7 should not have enhanced any conviction and this matter should be remanded pursuant to *Cook, supra,* 60 Cal.4th 922. However, an appellate court generally will decline to address an issue, or will address it in a summary manner, when an issue is raised for the first time in a reply brief. (*People v. Grimes* (2015) 60 Cal.4th 729, 757.) To allow issues to be belatedly raised is unfair to the respondent and increases the appellate court's labors. (*Ibid.*) Accordingly, we decline to address these arguments, or the authorities which appellant cites, which were raised for the first time in appellant's supplemental reply brief at pages 13 through 15.

three-year enhancement for the great bodily injury imposed upon Jesse under Penal Code section 12022.7, subdivision (a). The court stayed imposition of sentence pursuant to Penal Code section 654. The abstract of judgment does not list the imposition of the enhancement for count 4.

An appellate court has jurisdiction to order correction of an abstract on its own motion so that the abstract accurately reflects the sentencing court's oral judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, if the motion to withdraw the plea is not filed or it is denied, the abstract of judgment shall be modified to reflect the imposition of the enhancement in count 4 pursuant to section 12022.7, subdivision (a).

## DISPOSITION

This matter is remanded to the trial court for the limited purpose of affording appellant an opportunity to file a motion to withdraw his plea. Any such motion must be filed in the superior court on or before 60 calendar days of the issuance of the remittitur. If appellant files no such motion within that time, or if the motion is denied, the judgment is affirmed. The trial court shall then amend the abstract of judgment to reflect the imposition of the enhancement for count 4 pursuant to Penal Code section 12022.7, subdivision (a), and forward the amended abstract to the appropriate authorities.

_____
LEVY, J.

WE CONCUR:


_____
HILL, P.J.



_____
PEÑA, J.

18.