Filed 3/16/20

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARTIN SANCHEZ,<br><br>Defendant and Appellant. | F076838<br><br>(Super. Ct. No. BF164349B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Cynthia Lee Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Martin Sanchez was convicted of attempted murder and assault with a firearm after his acquaintance fired a shotgun during a confrontation with other men.  To prove attempted murder, the prosecutor argued Sanchez directly aided and abetted the shooter

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and II of the Discussion.

and, alternatively, that attempted murder was a natural and probable consequence of assault with a firearm.

On appeal, Sanchez initially raised two issues. First, the evidence insufficiently proved his guilt. Second, the natural and probable consequences theory violates his due process rights.

We asked the parties to provide supplemental briefing on a third issue. Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 1), enacted after Sanchez's trial, conviction, and sentence, now prohibits imputing malice "to a person based solely on his or her participation in a crime." (Pen. Code, § 188, subd. (a)(3).)[1] In *People v. Medrano* (2019) 42 Cal.App.5th 1001 (*Medrano*), review granted March 11, 2020, S259948, a different panel of this court held the bill eliminates "the natural and probable consequences doctrine [as] a viable theory of accomplice liability for attempted murder." (*Id*. at p. 1013.)

We reject Sanchez's initial two claims, but agree with this court's holding in *Medrano, supra,* and must reverse the attempted murder conviction.

## BACKGROUND

The Kern County District Attorney filed an information charging Sanchez with the following felonies stemming from an incident occurring on May 30, 2016: attempted murder (§ 187, subd. (a); count 1), with a weapon enhancement (§ 12022, subd. (a)(1), and assault with a firearm (§ 245, subd. (a)(2); count 2).

**Trial Evidence**

While Sanchez was at a local park with his family, he was confronted by four men concerning title to a vehicle. The men threatened Sanchez physically and challenged his masculinity. Sanchez, angered, left the park and drove his family home.

---

[1] Undesignated statutory references are to the Penal Code.

2.

But Sanchez did not stay home. Instead, he picked up an acquaintance known as "poder negro[,] which translates to black power." Sanchez informed his acquaintance, the eventual shooter, about the earlier confrontation. The shooter entered the pickup with an "object … covered" in a sunshade. Sanchez claimed he believed the shooter was concealing "a bat or something" but expressed no concern or reservation about the weapon. Sanchez, knowing a fight might result, drove back to the park.

Once at the park, Sanchez and the shooter approached the men involved in the earlier confrontation. The parties separated into two groups. The shooter and two men walked towards the river. The shooter eventually dropped the sunshade, revealed a shotgun, and fired towards the victim. As the victim ran, the shooter gave chase and fired once more. The victim was shot in the face and back.

After the gunshots, a witness in the park heard "tires screeching" and "burning rubber" as a pickup drove towards the shooter. The shooter entered the pickup, driven by Sanchez, and headed towards the exit. The witness believed their efforts were coordinated.

## Instructions and Argument

The court, in part, instructed the jury as follows:

> "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. … Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.

> "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.

> "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." (CALCRIM No. 400.)

The court next instructed the jury on direct aiding and abetting principles. (CALCRIM No. 401.)

3.

The court then explained the natural and probable consequences doctrine:

> "[A] person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.
>
> "To prove the defendant is guilty of attempted murder … the People must prove that:
>
> "1. The defendant is guilty of assault with a firearm …;
>
> "2. During the commission of assault with a firearm … a coparticipant in that assault with a firearm … committed the crime of attempted murder …;
>
> "AND
>
> "3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of attempted murder … was a natural and probable consequence of the commission of assault with a firearm …." (CALCRIM No. 402.)

The prosecutor argued both theories to the jury: "[Y]ou can find him guilty as an aider and abettor or you can find him guilty of wanting to do a crime that naturally leads to attempted murder."

**Verdict and Sentence**

Sanchez was found guilty as charged. The verdicts did not specify an attempted murder theory. He was sentenced to serve eight years in prison.

## DISCUSSION

We first address Sanchez's initial claims. We then discuss why Senate Bill No. 1437 (SB 1437) eliminates the natural and probable consequences doctrine as it applies to attempted murder. Finally, we analyze the resulting prejudice in this case.

**I. The Evidence Sufficiently Proved Attempted Murder**

"There are two distinct forms of culpability for aiders and abettors. 'First, an aider and abettor with the necessary mental state is guilty of the intended crime.' " (*People v.*

4.

*Chiu* (2014) 59 Cal.4th 155, 158 (*Chiu*).)  " 'A "person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." ' [Citation.]  '[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*).)

" 'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*Nguyen, supra,* 61 Cal.4th at p. 1054.)  " 'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*Id*. at p. 1055.)

" 'Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also "for any other offense that was a 'natural and probable consequence' of the crime aided and abetted." ' " (*Chiu, supra,* 59 Cal.4th at p. 158.)  " 'Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.' " (*Id*. at p. 161.)  A natural and probable consequence is "judged objectively …. [Citation.]  The inquiry does not depend on whether the aider and abettor actually foresaw the" unintended offense. (*Id*. at pp. 161-162.)

" '[T]o be reasonably foreseeable "[t]he consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough …." ' [Citations.]  A reasonably foreseeable consequence is to be evaluated

5.

under all the factual circumstances of the individual case …." (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] … We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

The prosecutor here argued both theories to prove guilt. We find the evidence sufficient to prove each attempted murder theory and the assault with firearm conviction. To find proof beyond a reasonable doubt Sanchez directly aided and abetted attempted murder, a reasonable trier of fact could justifiably focus on the following credible evidence and inferences.

Sanchez was angry after he was challenged and insulted in front of his family. He left the park but chose to return despite knowing the potential consequences. He did not return alone. His acquaintance, the shooter, learned of the earlier confrontation. The shooter entered the pickup with a shotgun. A reasonable juror could infer the shooter had to first retrieve a shotgun before entering the pickup and would only do so after learning they would return to the park. Sanchez and the shooter must have known each other well because the shooter was willing to bring a loaded shotgun to the park and approach the victim's group without any apparent hesitation.

Once at the park, Sanchez and the shooter confronted the victim's party. A reasonable juror could infer the shooter purposefully lured the eventual victim away so as to both minimize the possibility of a potential counterattack and to maximize the probability of success. A reasonable juror could further infer the shooter intended to kill because he fired once, chased the victim, and fired again.

After the shots were fired, Sanchez drove so quickly to the shooter his "tires [were] screeching …." Together, they fled the park in the pickup. A reasonable juror could infer the entire scheme was coordinated. Indeed, one witness testified it appeared coordinated. This evidence sufficiently proves aiding and abetting attempted murder and assault with a firearm.

The evidence is also sufficient to prove attempted murder under the natural and probable consequences theory. Sanchez told his acquaintance about the earlier confrontation. They then decided to travel back to the park with the shotgun in tow. Sanchez himself admitted a fight was possible and believed his acquaintance was armed with a purpose. Although Sanchez said he believed the shooter was armed with a bat, a reasonable juror was entitled to discredit Sanchez's statement and instead reasonably infer he knew the acquaintance was armed with a shotgun. (See *People v. Miranda* (2011) 192 Cal.App.4th 398, 409-410.) This inference is reasonable because Sanchez chose to contact this specific acquaintance, discuss the prior confrontation, and the acquaintance then armed himself and entered the pickup with the intent to approach the victim's party despite being outnumbered, i.e., the shotgun would help even the numbers.

A reasonable juror could infer Sanchez and the shooter intended to approach and intimidate the victim's group by aiming the loaded shotgun at them which constitutes assault with a firearm. (See *People v. Penunuri* (2018) 5 Cal.5th 126, 147.) Judged objectively, a reasonable person would foresee a physical fight resulting based on both the earlier confrontation and the fact the acquaintance entered the pickup with the shotgun and, with knowledge of the preceding confrontation, agreed to return to the park

7.

without any evident apprehension or debate. In other words, the shooter was neither contacted for nor present to provide moral support.

Considering the entire circumstances, it is reasonably foreseeable that during the resulting fight the armed acquaintance would shoot with an intent to kill. When one intends an assault with a firearm, and an unintended attempted murder results with the same firearm, the attempted murder is reasonably foreseeable. Such a conclusion is nearly axiomatic and sufficient to prove attempted murder in this case.[2]

## II. The Natural and Probable Consequences Doctrine Does Not Violate Due Process

Sanchez secondarily argues the natural and probable consequences doctrine violates his due process rights. We disagree.

Our Supreme Court has repeatedly rejected similar challenges. (*People v. Richardson* (2008) 43 Cal.4th 959, 1021-1022; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 107; *People v. Garrison* (1989) 47 Cal.3d 746, 777-778.) We find no reason to reach a different conclusion either in general or as applied in this case and, in any event, are bound to follow this precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## III. The Natural and Probable Consequences Doctrine and Attempted Murder

As mentioned, we asked the parties to brief SB 1437 and its application to the issues in this case. We now conclude the natural and probable consequences doctrine cannot prove attempted murder.

"Aider and abettor culpability under the natural and probable consequences doctrine is vicarious in nature." (*Chiu, supra,* 59 Cal.4th at p. 164.) " ' "[A]ttempted murder requires a specific intent to kill …." ' " (*People v. Gonzalez* (2012) 54 Cal.4th

---

[2] This conclusion disposes of Sanchez's additional claim the evidence was insufficient under the natural and probable consequences doctrine because the shooting was "independent of the common plan to commit the … assault …." (*People v. Smith* (2014) 60 Cal.4th 603, 613.) As illustrated, the jury could justifiably find otherwise.

643, 664.)  Intent to kill is express malice.  (*Id.* at p. 653; *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 642.)  "[I]mplied malice cannot support a conviction of" attempted murder.  (*People v. Bland* (2002) 28 Cal.4th 313, 327.)  The natural and probable consequences doctrine therefore imputes specific intent to kill in attempted murder convictions.  (See *People v. Prettyman* (1996) 14 Cal.4th 248, 259 [" 'We euphemistically may impute the actions of the perpetrator to the accomplice ….'"].)

The issue, however, is that SB 1437 now prohibits imputing malice "to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  Because malice in the murder context is no longer imputable, the Legislature has eliminated the natural and probable consequences doctrine as a viable theory to prove attempted murder.  (*Medrano, supra,* 42 Cal.App.5th 1001, 1013; *People v. Larios* (2019) 42 Cal.App.5th 956, 968 (*Larios*), review granted Feb. 26, 2020, S259983.)

We choose not to restate verbatim the arguments presented in *Medrano* and *Larios*.  Suffice it to say, we agree with the analyses therein.  (See *Medrano, supra,* 42 Cal.App.5th at pp. 1012-1016 [under statutory construction principles, malice imputing prohibition applies to attempted murder]; *Larios, supra,* 42 Cal.App.5th at pp. 964-968 [same].)  Both *Medrano* and *Larios* disagreed with the contrary conclusions reached in *People v. Munoz* (2019) 39 Cal.App.5th 738, 753-756 (*Munoz*), review granted November 26, 2019, S258234, and *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103-1107 (*Lopez*), review granted November 13, 2019, S258175.  We similarly disagree with *Munoz* and *Lopez*.

We offer an additional reason we conclude SB 1437 applies to attempted murder.  Limiting SB 1437's malice imputing prohibition to murder has the absurd consequence of incentivizing murder.

" ' "[A] fundamental principle of statutory construction is that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences." ' " (*People v. Cook* (2015) 60 Cal.4th 922, 929-930.)  *Munoz* and *Lopez*

9.

hold the absence of "attempt" in section 188, subdivision (a)(3), means the Legislature intentionally excluded attempted murder from its malice imputing proscription. (*Munoz, supra,* 39 Cal.App.5th at pp. 754-756; *Lopez, supra,* 38 Cal.App.5th at pp. 1104-1105.) If this position is correct, then a criminal defendant's liability turns inversely on the victim's fortunes.

Consider, for example, the context within which these issues often arise: Criminal street gangs. Assume a hypothetical defendant sets out with his gang confederates to assault his rivals; if successful in their criminal enterprise, he may be guilty of assault and battery crimes with criminal street gang and injury enhancements. (E.g., §§ 245, 186.22, 12022.7.) However, if things go awry and one or more confederates intends to kill, the defendant's increased liability hinges on the victim's life or death.

If the hypothetical victim survives, the defendant may face a potential life sentence in a prosecution for an unintended attempted murder under the natural and probable consequences doctrine. (E.g., § 12022.53.) If instead the victim is killed, the defendant and all gang confederates who disavow the intent to kill face prosecution only for the intended assault and any other natural and probable crime committed to facilitate the murder, but not the murder itself.[3]

A sophisticated and sinister criminal street gang would understand that ensuring a victim's death reduces the gang's liability as a whole. While the pros and cons of eliminating the natural and probable consequences doctrine's application to murder are debatable, incentivizing murder is an undoubtedly absurd consequence of abrogating its applicability to murder but not attempted murder.

This absurd consequence is counterintuitive to the natural and probable consequences doctrine's deterrence rationale. (See *Chiu, supra,* 59 Cal.4th at p. 165

---

[3] They may, of course, still be prosecuted as direct aiders and abettors, a much more difficult task of circumstantially proving the defendant's intent to kill.

["doctrine serves the legitimate public policy concern of deterring aiders and abettors"].) Rather than reinforcing this deterrence rationale, limiting SB 1437's malice imputing prohibition to murder has the opposite effect of encouraging and sanctioning an " 'in for a penny in for a pound' " mentality. (See generally *People v. Martinez* (1982) 132 Cal.App.3d 119, 140 (dis. opn. of Staniforth, J.).)

For these reasons, we conclude SB 1437 abrogates the natural and probable consequences doctrine in attempted murder prosecutions. This conclusion applies retroactively on direct appeal. (*Medrano, supra,* 42 Cal.App.5th at pp. 1018-1019; *In re Estrada* (1965) 63 Cal.2d 740, 744.) Accordingly, Sanchez was prosecuted under both a valid direct aiding and abetting legal theory and an invalid legal theory because the natural and probable consequences doctrine is no longer a viable theory to prove attempted murder.

## IV. The Resulting Prejudice Requires Reversal

"Because we now hold that a defendant cannot be convicted of [attempted] murder under the natural and probable consequences doctrine, we must determine whether giving the instructions here allowing the jury to so convict defendant was harmless error. When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. [Citations.] [Sanchez's attempted] murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory that [he] directly aided and abetted the [attempted] murder." (*Chiu, supra,* 59 Cal.4th at p. 167.)

We presume the legally invalid theory infected the verdict because jurors are not " ' "equipped to determine whether a particular theory of conviction submitted to them is contrary to law …." ' " (*In re Martinez* (2017) 3 Cal.5th 1216, 1224.) We "must reverse the conviction[s] unless, after examining the entire cause, including the evidence, and

11.

considering all relevant circumstances," we determine the error is "harmless beyond a reasonable doubt." (*People v. Aledamat* (2019) 8 Cal.5th 1, 13.)

The court instructed the jury on both direct aiding and abetting and the natural and probable consequences doctrine as theories to prove attempted murder. The prosecutor urged both theories to the jury. The jury returned a general verdict finding Sanchez guilty of attempted murder.

After carefully reviewing the record, we conclude it does not provide any insight into the jury's deliberations and consequently the theory underlying the verdict—direct aiding and abetting or the natural and probable consequences doctrine—is impossible to surmise. Because the evidence is sufficient under either theory, we cannot find the resulting error harmless beyond a reasonable doubt and accordingly must reverse the conviction.

## DISPOSITION

The attempted murder conviction is reversed. We remand for further proceedings consistent with this opinion.

_____
                                                            SNAUFFER, J.

WE CONCUR:


_____
SMITH, Acting P.J.


_____
MEEHAN, J.