Filed 5/18/16  P. v. Hayrapetyan CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BAGHDO HAYRAPETYAN,<br><br>    Defendant and Appellant. | B264106<br><br>(Los Angeles County<br>Super. Ct. No. BA394951) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed as modified.

        Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Baghdo Hayrapetyan was convicted of killing his wife, Anahit[1] Hayrapetyan, and sentenced to 15 years to life in state prison. He contends on appeal the trial court should have instructed the jury on voluntary manslaughter because there is no conceivable reason a man would kill his wife of 40 years "unless she had done something that was sufficient to provoke him to react in a homicidal rage." We find this argument is nothing more than speculation and no substantial evidence supported an instruction on voluntary manslaughter. Accordingly, we affirm the judgment.

## FACTS

By all accounts, 63-year-old Anahit and 73-year-old Baghdo had a loving marriage that lasted over 40 years. They had three children, all of whom lived in Armenia. Anahit was very close to her sister and they spoke daily. On March 5, 2012, her sister became concerned when Anahit failed to return her phone calls. She asked her daughter, Anna Grigoryatis, for help. Anna tried to call her aunt and drop by her apartment, but was unable to reach Anahit or Baghdo. Later that morning, Anna returned to the apartment with her parents and convinced a building employee to open the door. Everything appeared to be in order in the apartment. There were no signs of forced entry. When Anna looked in the bedroom, however, she discovered Anahit and Bahgdo on the floor, motionless. Bahgdo was curled up in a fetal position with his head on Anahit's abdomen. Anahit was still in her pajamas. Believing they were both dead, Anna immediately exited the apartment and asked the employee to call "emergency." Paramedics arrived shortly thereafter and pronounced Anahit dead.

Baghdo was alive, but he was unresponsive when the paramedics asked him to move so they could check on Anahit. His blood pressure and pulse rate were low. He also had approximately six shallow stab wounds to his abdomen. Although there was blood on his t-shirt and sweater, the paramedics determined the wounds were not very deep and there was minimal blood loss. A bloody kitchen knife was found underneath him. Baghdo had a handkerchief tied tightly around his neck, but he did not appear to

---

[1] For ease of reference, we identify members of the family by their first names.

have trouble breathing. Baghdo was taken to the trauma center and received treatment for his injuries. Family members observed Anahit and Bahgdo only the day before the incident and neither appeared injured or in distress.

DNA taken from the handle of the knife showed two contributors: the profile of the major contributor matched Baghdo's, but no conclusion could be reached as to the profile of the minor contributor. Baghdo's blood was found on the blade of the knife as well as on blood stains found inside the bedroom.

An autopsy of Anahit determined the cause of death to be strangulation. Anahit was found with a red t-shirt wrapped around her neck. Her face had turned purple from pressure exerted on her neck. There was hemorrhaging on both sides of her neck and a fracture of a horn of the Adam's Apple, which indicated pressure had been exerted on her neck for 30 seconds. Samples taken from the t-shirt showed a mixture of DNA from Anahit and Baghdo.

Bruising and injuries on Anahit's body indicated she struggled to remove something from her neck and someone attempted to restrain her. Anahit had bruising on her upper arms and her hand, indicating someone held or restrained her there. She also had bruising to her chin, where someone may have either held her tightly with his index finger and thumbs or punched her. She had scrapes along her face and neck area, which the coroner opined could have been from her own fingernails as she struggled to remove something from her neck. She also had injuries consistent with being punched, including a black eye and hemorrhages to the back of her head and left temporal muscle.

Baghdo was charged with willful, deliberate, and premeditated murder in violation of Penal Code section 187, subdivision (a),[2] with the further allegation that he inflicted great bodily injury in committing the offense within the meaning of Penal Code sections 1203.075, subdivision (a) and 12022.7. During trial, the prosecution moved to reduce the charge to second degree murder and it was granted. Baghdo pleaded not guilty and not guilty by reason of insanity. At trial, the prosecution presented evidence of Anahit's

---

[2] All further section references are to the Penal Code unless otherwise specified.

3

death as described above. Baghdo did not present any evidence. The jury found Baghdo guilty of second degree murder and found the great bodily injury allegation to be true.

A bifurcated trial on the issue of sanity was then presented to the jury, which found Baghdo sane at the time of the commission of the crime. The trial court denied Baghdo's motion for a new trial and for a reduction of the verdict to not guilty by reason of insanity. Baghdo was sentenced to 15 years to life in state prison and ordered to pay various restitution and fines. He timely appealed.

## DISCUSSION

Baghdo contends the trial court committed prejudicial error when it failed to instruct the jury on the lesser included offense of voluntary manslaughter because "[i]t is difficult to conceive why a 73-year-old man, who had a loving, caring relationship with his wife for 40 years, would beat and kill her unless she had done something that was sufficient to provoke him to react in a homicidal rage." We decline to credit such wild speculation. There is no evidence of heat of passion or provocation sufficient to require a jury instruction on voluntary manslaughter.

It is well settled that the trial court has an obligation to give instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155 (*Breverman*).) However, a trial court has no obligation to instruct on theories lacking substantial support in the evidence. (*Id.* at p. 162.) "'Substantial evidence' in this context is "'evidence from which a jury composed of reasonable [persons] could . . . conclude[]"' that the lesser offense, but not the greater, was committed." (*Ibid.*) "In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*Ibid.*)

Voluntary manslaughter, a lesser included offense of murder, is the unlawful killing of a human being without malice "upon a sudden quarrel or heat of passion." (§ 192, subd. (a); *Breverman, supra,* 19 Cal.4th at p. 154.) A voluntary manslaughter instruction is thus required when substantial evidence supports a finding the killer's reason was actually obscured as the result of a strong passion aroused by a "provocation"

4

sufficient to cause an ""ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than from judgment."" (*Breverman, supra,* 19 Cal.4th at p. 163, quoting *People v. Berry* (1976) 18 Cal.3d 509, 515.) "[N]o specific type of provocation [is] required . . . ." (*People v. Berry, supra*, at p. 515.) Moreover, the passion aroused need not be anger or rage, but can be any ""[v]iolent, intense, high-wrought or enthusiastic emotion"" (*Ibid.*)

Baghdo points to the violence of the encounter and the couple's loving 40-year marriage as "sufficient to create a reasonable inference that appellant must have killed his wife in a heat of passion caused by provocation that is sufficient of voluntary manslaughter." Baghdo contends there is no other explanation for the killing given these two facts. That is pure speculation. There is no evidence of any provocation from Anahit that would arouse a strong passion in an ordinary person of average disposition. No one heard the couple arguing or fighting. Indeed, Anahit's family observed the couple the day before her murder and reported neither Anahit or Baghdo appeared upset or injured. Instead, Anahit's family testified she and Baghdo helped one another and had a loving relationship. "Adequate provocation as an element of voluntary manslaughter must be affirmatively demonstrated; it cannot be left to speculation." (*People v. Williams* (1969) 71 Cal.2d 614, 624.)

Baghdo next contends the great bodily injury enhancement must be stricken as it is inapplicable when a defendant is convicted of murder. The Attorney General concurs and we agree. At sentencing, the trial court noted it did not impose any additional punishment on the great bodily injury enhancement under section 12022.7 because "that would be double punishment." However, section 12022.7 expressly states it "shall not apply to murder or manslaughter. . . " (§ 12022.7, subd. (g); *People v. Cook* (2015) 60 Cal.4th 922, 925.) Thus, the finding that great bodily injury was inflicted by Bahgdo should be stricken.

5

## DISPOSITION

The judgment is affirmed, and the abstract of judgment is ordered modified to reflect the section 12022.7 great bodily injury enhancement is stricken.  The clerk is ordered to correct the abstract and forward it to the Department of Corrections and Rehabilitation.


                                                BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J.