Filed 3/9/21  P. v. Tinsley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C087871 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE016082) |
| v. | |
| DASHAWN KWAMA TINSLEY et al., | |
| Defendants and Appellants. | |

A jury found defendants Dashawn Kwama Tinsley and RV Allahali Watson guilty of one count of murder and three counts of attempted murder and found true allegations that both defendants personally and intentionally discharged firearms in the commission of the offenses.  The trial court sentenced Tinsley to an aggregate indeterminate term of 121 years to life consecutive to a determinate term of 20 years and—after finding true the allegation that Watson suffered a prior serious felony conviction—sentenced Watson to an aggregate indeterminate term of 167 years to life, consecutive to a determinate term of 40 years.

Tinsley argues:  (1) we must remand for the trial court to exercise its discretion to strike the firearm enhancements (pursuant to a law that became effective seven months

1

before Tinsley was sentenced), because the record affirmatively shows the trial court was unaware it had such discretion; and (2) in the alternative, trial counsel provided ineffective assistance by failing to ask the trial court to strike the firearm enhancements.

We disagree with those contentions.

Watson argues we must remand to permit the trial court to exercise its discretion to strike one or more of the five-year prior serious felony enhancements it imposed, because of changes to the law while this appeal was pending.

We agree with this contention.

Finally, both defendants argue we must strike a fee the trial court imposed. The People agree. We accept the People's concession and will strike the fee.

## BACKGROUND

*Factual and Procedural Background*

We provide only the background necessary for resolution of this appeal.

On December 24, 2015, defendants each used a handgun to fire multiple shots at a victim, who survived. They laughed about the shooting immediately afterwards. A few days later, defendants each used a handgun to fire multiple shots into a car with three occupants, killing one person, and injuring a second.

On June 5, 2018, a jury found defendants guilty of one count of murder and three counts of attempted murder. (Pen. Code, §§ 187, 664.)[1] The jury found true allegations that each defendant personally used and intentionally discharged a firearm in the commission of the crimes. (§ 12022.53, subds. (b)-(d).)

In anticipation of an August 24, 2018, sentencing hearing, Tinsley's counsel filed a "social history" report detailing Tinsley's childhood, and Watson's counsel filed a "sentencing memorandum" that asked the trial court to exercise its discretion to strike the firearm enhancements.

---

[1]     Further undesignated statutory references are to the Penal Code.

2

At the hearing, after the trial court found true the allegation that Watson suffered a prior serious felony conviction, and announced that "[t]he matter [was] on for the imposition of judgment and sentence for both defendants," Watson's counsel requested the trial court continue Watson's sentencing so that she could "file a *Romero* motion."[2] The trial court granted Watson's request, and proceeded to Tinsley's sentencing.

The trial court said Tinsley's crimes were "appalling," and reflected "a total disregard for human life," as Tinsley "basically hunted down" his four victims, all of whom "easily" could have been killed. The trial court imposed an aggregate indeterminate sentence of 121 years to life consecutive to a determinate term of 20 years, consisting of: for each of the three attempted murders, consecutive terms of seven years to life, for a total of 21 years to life; for the gun enhancements, three consecutive terms of 25 years to life for the three offenses that caused great bodily injury (§ 12022.53, subd. (d)), and a consecutive term of 20 years for the unharmed attempted murder victim (§ 12022.5, subd. (c)); and for the murder, a consecutive term of 25 years to life.

Regarding costs, the trial court ordered Tinsley to pay a $10,000 restitution fine (§ 1202.4, subd. (b)), county jail administrative fees of $402.38 and $99.19 (Gov. Code, § 29550.2), a court security fee of $160 ($40 per offense) (§ 1465.8), and a conviction assessment of $120 ($30 per offense) (Gov. Code, § 70373). The trial court also imposed a "20 percent criminal impact fee," and reserved the issue of victim restitution.

At Watson's sentencing hearing, held one month later, the trial court denied the *Romero* motion to strike the prior serious felony, explaining that Watson's conduct had "escalated tremendously" since his prior strike conviction, noting that he "easily" could have killed four people, having showed "a total disregard for the law and authority" and a "complete disregard for the value of human life." Watson's "conduct [was] exactly what the Three Strikes Law was designed for," the trial court emphasized.

---

[2]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

3

The trial court also denied Watson's request to strike the gun enhancements, noting "the gun use in this case was egregious."

The trial court imposed an aggregate indeterminate term of 167 years to life, consecutive to a determinate term of 40 years, consisting of: for each of the three attempted murders, consecutive terms of seven years to life, doubled for the prior strike, for a total of 42 years to life; for the murder, a consecutive term of 25 years to life, doubled to 50 years; for the gun enhancements, three consecutive terms of 25 years to life for the three offenses that caused great bodily injury (§ 12022.53, subd. (d)), and a consecutive term of 20 years for the unharmed attempted murder victim (§ 12022.5, subd (c)); and, for each offense, a five-year enhancement (§ 667, subd. (a)), for another 20 years.

Regarding costs, as with Tinsley, the trial court ordered Watson to pay a $10,000 restitution fine (§ 1202.4, subd. (b)), county jail administrative fees of $402.38 and $99.19 (Gov. Code, § 29550.2), a court security fee of $160 ($40 per offense) (§ 1465.8), and a conviction assessment of $120 ($30 per offense) (Gov. Code, § 70373). The trial court also imposed a "20 percent criminal impact fee."

Defendants filed timely notices of appeal.

*Recent Changes to Sentencing Statutes*

Senate Bill No. 620 (2017-2018 Reg. Sess.), which went into effect on January 1, 2018, amended section 12022.53 to remove the bar on striking a firearm enhancement and grants the trial court discretion pursuant to section 1385 to strike or dismiss an enhancement. (Stats. 2017, ch. 682, §§ 1-2) "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." (§ 12022.53, subd. (h).)

4

Senate Bill No. 1393 (2017-2018 Reg. Sess.), which went into effect on January 1, 2019, amended sections 667, subdivision (a) (Stats. 2018, ch. 423, § 64), and 1385, subdivision (b) (Stats. 2018, ch. 1013, § 2), to allow a trial court to exercise its discretion to strike or dismiss a prior serious felony enhancement for sentencing purposes.

## DISCUSSION

### I

### *Tinsley's Firearm Enhancements*

Tinsley argues we must remand for the trial court to exercise its discretion to strike the firearm enhancements pursuant to Senate Bill No. 620, because the record "affirmatively shows that the trial court was unaware of its discretion to strike" those enhancements when it sentenced Tinsley.

The People respond that, because the record is "silent," we must presume the trial court was aware of its discretion to strike the firearm enhancements. The People further maintain that the trial court's decision not to strike the firearm enhancements at Watson's sentencing hearing, one month after Tinsley's sentencing hearing, "suggest[s] that the court was aware" of its discretion "all along."

We conclude the record does not affirmatively show the trial court was unaware of its discretion to strike Tinsley's firearm enhancements. Rather, the record suggests the trial court *was* aware of its discretion.

"[U]nless the record affirmatively shows otherwise, a trial court is deemed to have considered all relevant criteria in . . . making any . . . discretionary sentencing choice." (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1318, overruled on another ground in *People v. Cook* (2015) 60 Cal.4th 922, 935, 939.) "[W]e may not assume the court was unaware of its discretion simply because it failed to explicitly refer to its alternative sentencing choices." (*People v. Weddington* (2016) 246 Cal.App.4th 468, 492.)

"On a silent record, we presume the trial court" exercised its sentencing discretion; a presumption that "is a logical extension of the rule 'concerning the presumption of

5

regularity of judicial exercises of discretion apply[ing] to sentencing issues.' " (*People v. Burnett* (2004) 116 Cal.App.4th 257, 261.)

Here, Tinsley's sentencing occurred seven months after Senate Bill No. 620 became effective, and though the trial court did not explicitly refer to its discretion to strike the firearm enhancements, the record does not affirmatively show the trial court was unaware of that discretion. Indeed, before the August 2018 hearing at which *both* Tinsley and Watson were to be sentenced, Watson filed a pleading asking the trial court to exercise its discretion to strike firearm enhancements. Though the trial court denied that request in September 2018, the record indicates the trial court was prepared to sentence Watson at the August 2018 hearing, and therefore that the trial court had read Watson's pleading. Thus, consistent with the presumption of regularity, the record suggests the trial court was aware of its discretion to strike the firearm enhancements at the August 2018 hearing when it sentenced Tinsley. Even without the Watson pleading, the record is, at most, "silent."[3]

We conclude no remand is required.

## II

### *Tinsley's Ineffective Assistance of Counsel Claim*

Tinsley raises the alternative argument that his trial counsel provided ineffective assistance in failing to request the trial court strike the firearm enhancements. The People disagree.

We reject this claim.

---

**3**      In his opening brief, Tinsley argued the probation report "indicated that the firearm enhancements were mandatory," but—after considering the People's response to that point, which Tinsley acknowledged was "correct"—Tinsley argued the probation report had a "clear implication" the trial court "lack[ed] . . . discretion to strike" the firearm enhancements.

      An incorrect "implication" in a probation report (that the trial court may not have had discretion), does not amount to an *affirmative showing* the trial court was unaware of its sentencing discretion.

6

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691-692 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).) A reviewing court may reject a claim of ineffective assistance of counsel without addressing both components if a defendant makes an insufficient showing as to either prong. (*Strickland*, 466 U.S. at p. 697.)

" 'Surmounting *Strickland*'s high bar is never an easy task.' " (*Harrington v. Richter* (2011) 562 U.S. 86, 105 (*Richter*).) This is because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . ." (*Ibid.*) Thus, we apply the *Strickland* standard "with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." (*Ibid.*) To that end, "if the record ' "sheds no light on why counsel acted or failed to act in the manner challenged," ' we must reject the claim ' "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Caro* (2019) 7 Cal.5th 463, 488.)

To show prejudice, defendant must show a reasonable probability of a more favorable result had counsel's performance not been deficient. (*Strickland*, *supra*, 466 U.S. at pp. 693-694; *Ledesma*, *supra*, 43 Cal.3d 171 at pp. 217-218.) "The likelihood of a different result must be substantial"—showing the errors had some conceivable effect on the outcome is insufficient. (*Richter*, *supra*, 562 U.S. at pp. 104, 112.)

Here, even assuming for the sake of argument that trial counsel's performance was constitutionally deficient, Tinsley has not demonstrated a reasonable probability of a more favorable result.

7

Tinsley's "prejudice" argument is that "[t]he trial court had a large range of options," and "could have imposed a sentence as low as 46 years" "if all of the enhancements were stricken but all counts still run consecutive." But this explains merely what was possible or conceivable; not what was reasonably probable. (See *In re Welch* (2015) 61 Cal.4th 489, 521 ["the prejudice inquiry requires us to examine whether it is reasonably probable, not merely possible"]; *People v. Almanza* (2015) 233 Cal.App.4th 990, 1007 ["*Strickland* speaks not of possibilities, but reasonable probabilities"].) We conclude Tinsley has not carried his burden and this claim is rejected.

III

*Watson's Prior Serious Felony Enhancements*

Watson argues that, because Senate Bill No. 1393 became effective while his appeal was pending, we must remand to permit the trial court to exercise its discretion to strike one or more of the section 667, subdivision (a) five-year enhancements it imposed. The People contend remanding for resentencing in this case would not be appropriate, "based upon comments made by the [trial] court at sentencing," and because the trial court "gave Watson the maximum sentence."

We conclude remand is appropriate.[4]

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion"

---

[4] Watson argues that a decision by the trial court to strike even one of the section 667, subdivision (a) enhancements could affect his "inmate classification or housing." Even absent this representation, we would not consider our remand to be an idle act. (See *People v. McDaniels* (2018) 22 Cal.App.5th 420, 427 [because "even a very long reduced sentence may someday be further reduced through other avenues of postconviction relief or retroactive legislative changes," a remand for the exercise of sentencing discretion "is not an idle act just because a defendant may not derive a present practical benefit should the trial court exercise its discretion in the defendant's favor"].)

8

than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

In *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896, the appellate court refused to remand to allow the trial court to determine whether to dismiss a strike under section 1385, reasoning that "[u]nder the circumstances, no purpose would be served in remanding for reconsideration." (*Gutierrez*, at p. 1896.) The trial court had stated the maximum sentence was appropriate, especially since defendant "is the kind of individual the law was intended to keep off the street as long as possible." (*Ibid.*) As such, reasoned the appellate court, the trial court had "indicated that it would not, in any event, have exercised its discretion to lessen the sentence." (*Ibid.*; see also *People v. Chavez* (2018) 22 Cal.App.5th 663, 713-714 [absent a clear indication by the trial court that it would not have exercised discretion to strike or dismiss a firearm enhancement even if it had the discretion to do so at sentencing, the appropriate remedy is to remand for resentencing to allow the trial court to consider whether to exercise its discretion to strike it].)

Here, during sentencing, the trial court noted that Watson showed "a total disregard for the law and authority" and a "complete disregard for the value of human life." The trial court denied the *Romero* motion, concluding Watson's "conduct [was] exactly what the Three Strikes Law was designed for." Watson does not dispute the People's assertion that the maximum sentence was imposed.

But the denial of Watson's *Romero* motion, and what the trial court said when it denied that motion, is not a "clear indication" of the trial court's views on the distinct sentencing issue presented by Senate Bill No. 1393 and the five-year enhancement

9

contemplated by section 667, subdivision (a). (See *People v. Bell* (2020) 47 Cal.App.5th 153, 200 [the trial court's statement denying a *Romero* motion is "only a 'clear indication' of its views on *that particular* sentencing decision"]; cf. *People v. Williams* (2004) 34 Cal.4th 397, 401-405 [discussing the different statutory and policy backdrops of § 667, subd. (a) and the three strikes law].)

And while the trial court may have imposed the maximum sentence, it made no statement regarding such imposition. (See *People v. Billingsley* (2018) 22 Cal.App.5th 1076, 1081 [remanding to permit the trial court to exercise its sentencing, in part, because "the court did not *express an intention* to impose the maximum possible sentence"], italics added.)

Accordingly, we conclude remand is the appropriate remedy to allow the trial court to exercise its discretion to strike some or all of the prior serious felony enhancements.

IV

*The 20 Percent Criminal Impact Fee*

Defendants argue imposition of a 20 percent criminal impact fee was unauthorized, because no punitive "base fine" was imposed, leaving nothing for the criminal impact fee to rest on. The People agree. We accept the People's concession and will strike this fee.

Section 1465.7, subdivision (a) provides: "A state surcharge of 20 percent shall be levied on the base fine used to calculate the state penalty assessment as specified in subdivision (a) of Section 1464." Section 1464 contemplates "a state penalty in the amount of ten dollars ($10) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses . . . ."

But we agree with the parties that none of the costs imposed by the trial court fall within the meaning of "fine, penalty, or forfeiture" as used in section 1464. (See

10

§ 1202.4, subd. (e) ["[t]he restitution fine shall not be subject to penalty assessments authorized in Section 1464"]; *People v. Alford* (2007) 42 Cal.4th 749, 759 [the court security fee is not punitive]; *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1112 [conviction assessment is not punitive].)

Accordingly, the 20 percent criminal impact fee must be stricken.

## DISPOSITION

As to both defendants, the judgment is modified to strike the 20 percent criminal impact fee. As to defendant Tinsley, the judgment is affirmed in all other respects. As to defendant Watson, the cause is remanded so the trial court may consider exercising its discretion under Senate Bill No. 1393. The clerk of the trial court shall send amended abstracts of judgment to the Department of Corrections and Rehabilitation.


　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　HOCH, Acting P. J.


We concur:


　/s/
RENNER, J.


　/s/
KRAUSE, J.